JUNE ELLEN GLANDING, BY EDITH G. MAHAFFY, her guardian *ad litem,*

Defendant Below, Appellant,

*vs.*

INDUSTRIAL TRUST COMPANY, a corporation of the State of Delaware, Administrator *cum testamento annexo* under the last will of HERMAN GLANDING, deceased,

Complainant Below, Appellee,

and

HOWARD S. GLANDING AND REBA W. TAYLOR,

Defendants Below, Appellees.

*Supreme Court, On Appeal, April 29, 1946.*

RICHARDS, C. J., and SPEAKMAN, TERRY, and CAREY, JJ., sitting.

*James R. Morford* and *Thomas Cooch,* of the firm of Marvel and Morford, for appellant, June Ellen Glanding.

*William Poole,* of the office of Southerland, Berl and Potter, for appellee, Industrial Trust Company, Administrator.

*George C. Hering, Jr.,* of the firm of Hering, Morris, James and Hitchens, for appellees, Howard S. Glanding and Reba W. Taylor.

SPEAKMAN, Judge, delivering the opinion of the court:

Herman Glanding died a resident of Delaware, on or

about January 11, 1943, having first made his last will wherein he did provide, in part, as follows:

"Second: I give, devise and bequeath unto my beloved wife, Alice W. Glanding, all my property, real, personal and mixed, of whatever nature or kind, and wheresoever the same may be situate, to her and her heirs and assigns forever."

This is the only pertinent provision in the will. Alice W. Glanding, the testator's wife, died during his lifetime, the provision for her benefit lapsed and the estate in effect became an intestate estate.

Herman Glanding was the father of three children. Two of them, Howard S. Glanding and Reba W. Taylor, survived him. The other child, Charles Wesley Glanding, died July 25, 1941, which was during the lifetime of his father; he left no lineal descendants by birth, but he did leave surviving him an adopted daughter, June Ellen Glanding, the appellant herein.

The adoption proceedings were in the Municipal Court of Philadelphia County, Pennsylvania. They were instituted upon petition of Charles Wesley Glanding and Edith Glanding, his wife. In their petition it appeared that they resided in Wilmington, Delaware, that they desired to adopt Mary Elizabeth Bell, who was born on March 6, 1928, at Langhorne, Bucks County, Pennsylvania; that the child had been in their custody since March 24, 1929, and upon adoption they desired that the child should be known as June Ellen Glanding.

The *Pennsylvania Adoption Act of* 1925, *P.L.* 127, provides in *Section* 1 thereof, 1 *P.S.* § 1, that

"It shall be lawful for any adult citizen of this Commonwealth residing therein, desirous of adopting any person, either a minor or an adult, as his or her heir or as one of his or her heirs, to present his or her petition to the Orphans' Court, or to a law judge thereof, of the county where he or she may be a resident, or of the county in which the person to be adopted is a resident, declaring such desire * * *."

And in *Section* 4 of said *Act*, 1 *P.S.* § 4, it is provided that

"If satisfied that the statements made in the petition are true, and that the welfare of the person proposed to be adopted will be promoted by such adoption, and that all the requirements of this act have been complied with, the court or judge shall make a decree so finding and reciting the facts at length, and directing that the person proposed to be adopted shall have all the rights of a child and heir of such adopting parent or parents, and be subject to the duties of such child:   *   *   *.   If desired by the parties the decree may also provide that the adopted person shall assume the name of the adopting parent or parents.   *   *   *"

On July 9, 1935, the Pennsylvania Assembly passed an act validating certain adoption proceedings. *P.L.* 612, *No.* 214, *Sec.* 1, 1 *P.S.* § 5.   It provided that

"Any adoption heretofore granted or decreed by any court of record of this Commonwealth in which either the person or persons adopting, or the person or persons adopted, was a non resident or were non residents of this Commonwealth at the time such adoption was granted or decreed   *   *   *   is hereby declared valid and lawful as though made with full observance of all the requirements of the said act of Assembly mentioned:   Provided, That the petition and decree for such adoption was otherwise in accordance with the act of Assembly pertaining thereto."

It appears to have been admitted in the court below that at the time of the adoption proceedings the appellant was a resident of Pennsylvania.   No question has been raised concerning the fact that it appears that the petitioners were nonresidents of Pennsylvania at the time of the adoption proceedings, or concerning the jurisdiction of the Municipal Court of Philadelphia County or the regularity of the proceedings therein, or the effect of the validating act, so the validity of the adoption will be assumed.

The courts have frequently been called upon to consider the status of an adopted child under local statutes of descent and distribution, where the adoption proceedings were in a foreign jurisdiction.

In *Finkenzeller's Estate*, 105 *N.J. Eq.* 44, 146 *A.* 656, 657, affirmed in 107 *N.J. Eq.* 180, 151 *A.* 905, it was said:

"The weight of authority in this country is that a child adopted in a foreign state or country may take under local statutes of descent and distribution, if such foreign state or country had jurisdiction to fix his status with respect to his adoptive parents, and if the law with regard to adoption, of the state in which the real and personal property is situated, does not differ essentially from the laws of the state in which the adoption was had, so that local public policy is not violated by recognizing and giving effect to the adoption proceedings of the foreign state or country."

The rules as stated in *Restatement, Conflict of Laws*, are somewhat broader. They are as follows:

"8143. Effect of Foreign Adoption. The status of adoption, created by the law of a state having jurisdiction to create it, will be given the same effect in another state as is given to the status of adoption when created by its own law."

"8305. Adopted Child as Distributee. A person who has been made an adopted child will be treated for the purpose of distribution as if he were a natural-born legitimate child of his adopted parents if the law that regulates distribution gives such effect to adoption."

To 8305 there is the added comment:

"b. If the law of the state of the decedents' domicile allows an adopted child to take a distributive share, a legally adopted child will take a share although the law of the state of adoption where the chattel is provides otherwise. If the law of the state of the decedents' domicile does not allow an adopted child to take a distributive share he cannot do so, although the law of the state where the chattel is would allow him to take."

The language of the court in the above case and of the said rules in the Restatement are amply supported by the cases contained in the comprehensive annotations appearing in 73 *A.L.R.* 968; 64 *L.R.A.* 186; 21 *L.R.A.* (*N.S.*) 679; 25 *L.R.A.* (*N.S.*) 1285; *L.R.A.* 1916A, 666; 12 *Am. St. Rep.* 100; *Ann. Cas.* 1916B, 89; 5 *Eng. Rul. Cas.* 763.

An examination of the Pennsylvania and Delaware adoption statutes will disclose that, independent of and apart from the inheritance statutes of the two states, they are

not so essentially different as to preclude the application of the above rules in the present case; therefore, we have no hesitation in saying that the personal status of the appellant, as an adopted child, should be recognized in this state, with the same rights and privileges in this state as if the adoption proceedings had been taken within this state pursuant to our laws.

The provisions in our adoption statute of 1933, which deals with the relationship between an adopted child and its natural parents, and an adopted child and its adoptive parents is contained in *Section 3551 of the Revised Code of 1935*. It is in the following language:

"The natural parents * * * shall, by such final order of adoption, be divested of all legal rights and obligations in respect to the child, and the child shall be free from all legal obligations of obedience and maintenance with respect to them. Such child shall, from and after the entry of the interlocutory order herein provided for, be, to all intents and purposes, the child and heir at law of the person so adopting him or her, unless and until such order is subsequently revoked, entitled to all the rights and privileges and subject to all the obligations of a child of such person begotten in lawful wedlock; but on the decease of such person and the subsequent decease of such adopted child without issue, the property of such adopting parent still undisposed of shall descend to his or her next of kin, and not to the next of kin of such adopted child."

There is a conflict in the decisions of the courts of this country as to whether adoption statutes should be strictly or liberally construed. Usually the inheritance statutes are separate and distinct from the adoption statutes, but this does not mean that adoption statutes should not be read into the statutes of descent so as to give adopted children the rights of inheritance afforded them by the adoption statutes. While we are not prepared to say that the rule of strict construction should be extended to the adoption itself, we do think that an adoption statute when read apart from or in connection with an inheritance statute should not be construed so as to change the course of descent of intestate property unless it shows a clear intent on the

part of the Legislature to do so. It has been said that consanguinity is so fundamental in statutes of descent and distribution that it may only be ignored when courts are forced to do so either by the express terms of the statute or by inexorable implication. 1 *Am. Jur.* 656, and in *Kean's Lessee v. Hoffecker,* 2 *Har.* 103, 29 *Am. Dec.* 336, it was said by our former Court of Errors and Appeals that:—

"The general object of the intestate law in this state is, to continue the estate in the family of the intestate, without regard to the families or connections of those from whom it may have descended to the intestate, and it therefore looks principally to the paramount claim of proximity of blood to the intestate."

Although this was said in 1835 in construing a provision in an early intestate statute, it is equally true today under our present descent and distribution statutes. In our statute concerning intestate real estate it is provided by *Section* 3731 *of the Revised Code of* 1935, that:

"When any person having title * * * to any lands * * * in fee simple, shall die intestate as to the same, such lands * * * shall descend, in fee simple, unless herein otherwise provided, to his *kindred*, in coparceny, according to the following course, or order, to wit:"

The order of descent then follows in seven numbered paragraphs. The phrase "unless herein otherwise provided," has reference to the following: 1. "Brothers or sisters of the whole blood and their issue shall be preferred to brothers and sisters of the half blood and their issue"; 2. "Any lands * * * to which the intestate shall have title by descent, or devise, from his parent or ancestor, shall first descend to his brothers and sisters of the blood of such parent or ancestor"; and 3. The provisions for the benefit of the surviving spouse. In Section 3732 of said Code, it is provided that: "The words 'kin' and 'kindred' signify kin and kindred by blood, or consanguinity; * * *" and in the same section in the definition of "Inheritance or succession 'by right of representation'," we find this phrase, "and such representation shall hold although

the descent shall be entirely to the issue of *deceased children, brothers, sisters, or other kin."*

In our statute concerning the settlement of personal estates it is provided in *Section* 3847 of said *Code* that:

"The residue of the personal estate of a deceased person, after the payment of all legal demands and charges, shall be distributed to and among every the children of the intestate and the lawful issue of such children who shall have died before the intestate; but if there be none such, then to the father and mother, in equal shares, or if only one parent be living, all to such parent; or if there be none such, then to and among every the brothers and sisters of the intestate of the whole blood and the lawful issue of such of them as shall have died before the intestate or if there be none such, to and among the brothers and sisters of the intestate of the half blood, and the lawful issue of such of them as shall have died before the intestate; or if there be none such, then to and among the next of kin of the intestate, in equal degrees, and the lawful issue of such kin as shall have died before the intestate;  *  *  *."

*Section* 3848 of said *Code* provides, in part, that:

"Distribution among *children, brothers, or other kin* in equal degrees, shall be in equal portions;  *  *  *."

And in *Section* 3849 of said *Code* it is provided that:

"The term 'kin' shall have the same signification, and the method of computing degrees of consanguinity, shall be the same under this Chapter [concerning the settlement of personal estates] as under Chapter Ninety-four [relating to intestate real estate]."

We think that the provisions of our statute providing for the descent and distribution of intestate personal estates with respect to consanguinity are not essentially different from those in our statutes relating to the descent of intestate real estate, so that in determining to what extent an adoption, under our statute, changes the course of descent of either real or personal intestate property in this state, it must be kept in mind that in our inheritance statutes consanguinity is fundamental.

The appellant bases her claim upon the following language contained in said *Section* 3847 of said *Revised Code*:

"The residue of the personal estate of a deceased person, after the payment of all legal demands and charges, shall be distributed to and among every the children of the intestate and the lawful issue of such children who shall have died before the intestate; * * *."

Her specific contention is that she is the lawful issue of Charles Wesley Glanding, her adoptive father, who was a son of the intestate Herman Glanding, and who died during the lifetime of the intestate.

The language of the adoption statutes in most of the states is so materially different from that in our statute that nothing would be accomplished in reviewing the decisions of the various courts. However, the states of Ohio, Colorado and Washington have or have had adoption statutes containing language almost identical with the hereinabove quoted language from our adoption statute. In Ohio and Colorado the courts have construed the language strictly, while in Washington it has been given a liberal construction.

Our statute deals specifically with the natural parents, or previous guardian, the adoptive parent and the adopted child. If it goes further than that, it can only be so by necessary implication. With respect to the relationship between the natural parents and the child it is provided:—

"The natural parents * * * shall, by such final order of adoption, be divested of all legal rights and obligations in respect to the child, and the child shall be free from all legal obligations of obedience and maintenance in respect to them."

These rights and obligations are nothing more than the usual rights and obligations of the parent and child, while the child remains a member of his parents' family. The natural status of the parents and child are not changed after adoption by reason of the language in the statute. The child continues to be the child and heir at law and next of kin of the natural parents, and the natural parents continue to be the parents of the child with the same rights of inheritance as theretofore, save only with

respect to certain property received from the adoptive parents as to which our statute provides:—

"On the decease of such [adoptive] person and the subsequent decease of such adopted child without issue, the property of such adopting parent still undisposed of shall descend to his or her next of kin and not to the next of kin of such adopted child."

The critical language in our statute is that which provides as follows:—

"Such child shall, from and after the entry of the interlocutory order * * * be, to all intents and purposes, the child and heir at law of the person so adopting him, * * * entitled to all the rights and privileges and subject to all the obligations of a child of such person begotten in lawful wedlock; * * *."

It is quite apparent from the above language that the adopted child is expressly given the right to share in his adoptive parent's intestate estate as if he was a natural child of his adoptive parent. No other right to inherit is specifically given to the adopted child. In addition to this right of inheritance from his adoptive parent, an adopted child is "entitled to all the rights and privileges and subject to all the obligations of a child of such [adoptive] person begotten in lawful wedlock." These are but the related rights, privileges and obligations of any natural parent and child while the child remains in the household unemancipated. On the part of the parent is the right and duty to control, protect, support, and guide or educate the child. On the other hand the duty of the child is to serve and obey its parents. 30 *Am. Jur.* 592. These rights, privileges and obligations are the rights, privileges and obligations of which the natural parents are divested and from which is freed their child upon the adoption of the child under the language contained in the statute, namely,

"The natural parents * * * shall, by such final order of adoption, be divested of all legal rights and obligations in respect to the child, and the child shall be free from all legal obligations of obedience and maintenance in respect to them."

We think that our adoption statute insofar as its

provisions relate to the status of the natural parents, the adopted child and the adoptive parents, deals with personal rights and duties except insofar as it gave to the adopted child a right of inheritance by the use of the language, "Such child shall, from and after the entry of the interlocutory order * * * be, to all intents and purposes, the child and heir at law of the person so adopting him * * *."

The adoption statute of Ohio, *Gen. Code* 1930, § 8030, prior to an amendment in 1932 contained language almost exactly identical with the pertinent language in our statute. The Supreme Court of Ohio in *Upson v. Noble*, 35 *Ohio St.* 655, in construing and interpreting the language in the Ohio statute, arrived at a conclusion which is substantially in accord with our views. Under the Ohio descent and distribution statute, upon the death of an intestate, the order of distribution was first "to the children of the intestate and their legal representatives." The statute specifically provided, with respect to distribution to brothers and sisters, that brothers and sisters of the whole blood should be preferred to brothers and sisters of the half blood. The court said:

"The right of succession to intestate property, in this state, is regulated by statute law, and the rightful distribution of the estate of Maud Young [the intestate] depends on the construction of several statutes in pari materia. * * * This [adoption] statute, in so far as it changes the general course of descents and distribution of intestate property, and ignores all merit on account of blood, should be strictly construed. And while we find in it a clear declaration that the adopted child shall be the 'legal heir' of its adopting parents, there is no express provision that it shall be capable of inheriting from any other person, or of transmitting an inheritance to any one."

The final conclusion of the court was that in passing the adoption statute the legislature was "dealing with personal rights and duties growing out of the relation of parent and child, by transferring them from the natural to the adopted relation," and that the statute "enabled the adopted child to inherit from its adoptor, but not through him."

The construction of the Ohio statute by the court in the *Upson* case has been consistently followed by the Supreme Court of that state. See *Quigley v. Mitchell*, 41 *Ohio St.* 375; *Phillips v. McConica*, 59 *Ohio St.* 1, 51 *N.E.* 445, 69 *Am. St. Rep.* 753; and *Albright v. Albright*, 116 *Ohio St.* 668, 157 *N.E.* 760.

In the Colorado adoption statute there is language identical with that considered by the court in the *Upson* case. In *Russell, et al., v. Jorden, et al.*, 58 *Colo.* 445, 147 *P.* 693, 694, *Ann. Cas.* 1916C, 760, the court, in referring to *Section* 526 of the *Revised Statutes of* 1908 of Colorado, said:

"Section 526 was enacted in 1885, and appears to have been adopted bodily from the Ohio statutes. The statute was construed * * * before it was enacted by our Legislature. It has been held by this court that prior construction under such circumstances is at least strongly persuasive upon the courts of this state, for the reason that the presumption is that the law was enacted in the light of the construction given it by the courts of the state from which the statute was taken."

The court then quoted at length from *Upton v. Noble, supra,* and *Phillips v. McConica, supra,* and after citing various authorities from other states as being in support of the Ohio cases, and others as taking a contrary view, adopted the reasoning of the Ohio authorities. In 1931 the legislature of Colorado broadened the rights of the family of the adoptive parents to inherit from an adopted child. *In re Warr's Estate*, 111 *Colo.* 85, 137 *P.* 2d 408, the court held that there was no change in the statutes which added to the inheritance of an adopted child between the decision in *Russell v. Jordan* and the date of the death of the intestate in the case then under consideration, and that they found nothing which justified a departure from *Russell v. Jordan.*

*In re Masterson's Estate*, 108 *Wash.* 307, 183 *P.* 93, 94, the court in construing its adoption statute, which was almost exactly the same as the Ohio statute, said:

"There is, however, one statute, that of the state of Ohio, which is substantially the same as our statute and in almost the identical language. The Supreme Court of that state, in *Phillips, Executor, v. McConica, Guardian*, 59 *Ohio St.* 1, 51 *N. E.* 445, 69 *Am. St. Rep.* 759, in construing the statute, expressed a view different from that above indicated. But that court held that the statute must be 'strictly construed.' Since we have declined to accept the rule of strict construction, the Ohio case cannot be regarded as persuasive authority."

The view of the court was that the language in their statute, "[such adopted child] shall be, to all intents and purposes, the child and legal heir of his adopter or adopters, and entitled to all rights and privileges and subject to all the obligations of a child of the adopter or adopters begotten in lawful wedlock," *Rem. & Bal. Code,* § 1699, is broad and comprehensive, and that one of the rights and privileges of a natural child is to inherit from a brother and sister, the natural sons or daughters of the same parents.

Under our inheritance statutes which provide specifically that brothers and sisters of the whole blood are to be preferred to brothers and sisters of the half blood, we would not feel justified in adopting the construction of the Washington statute by the Supreme Court of that state if we should have a similar case before us under our law, nor do we feel justified in holding that an adopted child is the "lawful issue" of its adoptive parents within the meaning of our statutes of descent and distribution, so as to enable it to take by succession directly from the parent of its adoptive father, when the adoptive father had died during the lifetime of his father. An adopted child upon its birth becomes the lawful issue of its natural parents, and continues to be so after its adoption. It is not and could not be made the "lawful issue" of its adopted parents by act of the Legislature or by any other means. There is nothing in either our adoption or inheritance statutes that provides that an adopted child shall take by inheritance from its adoptive parents, ancestors, descendants or collaterals "as if it were the lawful issue," or words of like

import. The appellee upon her adoption, under the language of our statute, became "to all intents and purposes, the child and heir at law of the person so adopting * * * her." As to the father of her adoptive father, as well as to his other kindred, her position before as well as after adoption was that of stranger in blood. Other than the right of an adopted child to take by descent from an adoptive parent who died intestate, we can find, in our adoption statute, no express or implied intent on the part of the Legislature to change the course of descent of intestate property under our inheritance statutes.

For the reasons above stated, the decree of the Chancellor will be affirmed.