**WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Petitioner,**

v.

**Harry G. HASKELL, Jr., et al., Respondents.**

Court of Chancery of Delaware, New Castle.

Sept. 1, 1971.

On Reargument Oct. 8, 1971.

Rodney M. Layton, Jr., and Richard G. Elliott, Jr., of Richards, Layton & Finger, Wilmington, for Wilmington Trust Co.

H. James Conaway, Jr., Guardian ad litem, and Jack B. Jacobs, of Young, Conaway, Stargatt & Taylor, Wilmington, for Christopher D. Haskell.

Charles S. Crompton, Jr., Guardian ad litem, and Michael D. Goldman, of Potter, Anderson & Corroon, Wilmington, for minor or unborn issue of Harry G. Haskell and Elizabeth H. Fleitas.

DUFFY, Chancellor:

Wilmington Trust Company, Trustee under inter vivos and testamentary trusts established by Harry G. Haskell, seeks instructions as to the right of Christopher D. Haskell, an adopted son of Trustor's natural son, Harry G. Haskell, Jr., to receive income and/or principal under those trusts which name as beneficiaries the "issue" of Mr. Haskell, Sr., or Mr. Haskell, Jr., respectively. The Court appointed a Guardian ad litem for Christopher, who is a minor, and another Guardian ad litem for other minor beneficiaries (Respondents). This is the decision on cross motions for summary judgment.

A.

On January 2, 1940 Mr. Haskell made an agreement with Wilmington Trust Company as Trustee in which it is provided that income is to be paid to Helen D. Barfield (Trustor's sister-in-law) for life, then to

"* * * Trustor's issue more remote than children, from time to time surviving, per stirpes and not per capita, * * *"

Upon the death of the last survivor of Mrs. Barfield, Elizabeth H. Fleitas (Trustor's daughter) and Mr. Haskell, Jr. principal and undistributed income are distributable to the

"* * * then living issue of Trustor, per stirpes and not per capita, * * * or failing any such issue then unto the person or persons who shall then be determined to be the distributees of Trustor by the application of the intestacy laws of the State of Delaware then in effect, irrespective of whether or not Trustor shall then be living."

On December 7, 1945, Mr. Haskell executed a will in which the residue of his estate is divided into twelve equal parts. As amended by codicils dated October 28, 1947 and April 24, 1950, six parts of the residue are distributable as follows:

(a) Under Item 1, one part to Wilmington Trust Company to establish a trust the income of which is payable to Mr. Haskell, Jr., for life. Upon his death, the principal is to be paid to "the then living issue of my said son, HARRY G. HASKELL, JR." If such issue are not 21, the trust is to continue for their benefit until age 21. If there are "no then living issue of" Mr. Haskell, Jr., principal is to pass in a similar manner to the living issue of Mrs. Fleitas. Finally,

"* * * if there shall be no then living issue of either my said son or my said daughter, then unto such living person or

persons who shall then be determined to be the distributees of my son, HARRY G. HASKELL, JR., by application of the intestacy laws of the State of Delaware in effect at the time of his death."

(b) Under Item 4, two parts to Wilmington Trust Company for the benefit of the issue of Mrs. Fleitas or, if none, for Mr. Haskell, Jr.'s issue, or if none, then principal and accumulated income are distributable to:

" * * * such living person or persons who shall then be determined to be the distributees of my daughter Elizabeth Haskell Fleitas, by application of the intestacy laws of the State of Delaware in effect at the time of her death."

The codicil of October 28, 1947 took one part from Item 1 and established a trust with income to Mary Carey Haskell for life, and return of principal to Item 1 at her death.

The codicil of April 24, 1950 took two parts from Item 1 and established a trust with income to be paid:

" * * * in convenient installments, unto the issue of my said son, HARRY G. HASKELL, JR., from time to time surviving, if any, per stirpes and not per capita, * * *; or if at any time there shall be no issue of my said son then living, then unto the issue of my daughter ELIZABETH HASKELL FLEITAS, from time to time surviving, if any, per stirpes and not per capata, * * *;

Upon the death of my said son, HARRY G. HASKELL, JR., * * * I direct my Trustee forthwith to * * * deliver this trust estate, * * * unto the then living issue of my said son, HARRY G. HASKELL, JR., per stirpes and not per capita * * *; or if there shall be no then living issue of my said son, then unto the living issue of my daughter, * * *; or if there shall be no living issue of either my said son or my said daughter then unto such living person or persons who shall then be

determined to be the distributees of my son, HARRY G. HASKELL, JR., by application of the intestacy laws of the State of Delaware in effect at the time of his death."

Article Eighth of the will empowers the Trustee to invade corpus of any trust by providing as follows:

"If at any time and from time to time during the continuance of any trust created in this my Will my said Trustee, in its discretion, shall consider that the funds payable therefrom unto or for the benefit of any beneficiary of such trust, together with the funds available to such beneficiary from other sources, are insufficient to provide properly for the essential needs of such beneficiary and his or her dependents, such as food, clothing, shelter and illness expenses, I authorize and empower my said Trustee to pay over or apply so much of the principal or any part of the whole of such trust from which such beneficiary may then be receiving payments or the benefit thereof, in such manner and to such extent as my said Trustee, in its discretion, shall deem to be necessary to meet such essential needs of such beneficiary and his or her dependents."

Harry G. Haskell died on January 4, 1951. Christopher was born on February 29, 1952 and adopted by Mr. Haskell, Jr., on November 13, 1953. Mrs. Barfield died on June 11, 1968.

## B.

The Trustee petitions for instructions as to the following questions:

1) Is Christopher entitled to receive income from the 1940 inter vivos trust?

2) Is Christopher entitled to participate in the distribution of trust principal and undistributed income at termination of the 1940 inter vivos trust?

3) Is Christopher entitled to participate in the distribution of principal and undis-

tributed income at termination of the trust established by Item 1 of Mr. Haskell's will?

4) Is Christopher entitled to participate in the distribution of principal and undistributed income at termination of the trust established by the 1950 codicil to Mr. Haskell's will?

5) Has Christopher a contingent interest in remainder to participate in the distribution of principal and undistributed income at termination of the trust established by Item 4 of Mr. Haskell's will?

6) Is Christopher entitled to participate in any distribution which the Trustee may direct of principal from any trust covered by Article Eighth of Mr. Haskell's will?

Christopher's Guardian argues that all six of these questions are properly before the Court and ready for decision but Respondents contend that only Christopher's right to income under the 1940 trust is now ready.

■ In Equitable Trust Co. v. Pyle, 23 Del.Ch. 41, 2 A.2d 81 (1938) the Chancellor held that the Court would not answer a question propounded by a trustee unless facts are shown actually to have arisen which make the question one of present exigency. And that has been the consistent view of this Court. We do not provide an advisory opinion, even to a fiduciary.

■ I recognize that instructions on all questions submitted might aid the Trustee generally and might be of specific help

to the Haskell family for planning purposes but, regrettably, the Court cannot authoritatively answer all questions at this time. The simple reason is that some questions are necessarily based on facts which may never exist and thus, by the nature of things, have no "present exigency". Questions 3, 4, 5, and 6 are in this category: Christopher's right to benefit depends, in the first place, upon his survival of other persons and, in any event, it may be governed by intestacy laws in effect on a future date. If the Trustee has reasons to invoke the provision of Article Eighth (of the will) for Christopher's benefit and thus must know whether it is to regard him as a "beneficiary", a record should be made as to this followed by an application for further instructions. But the Article, standing alone, does not propose a current question, Equitable Trust Co. v. Pyle, supra.[1]

■ Mrs. Barfield has died and, as Respondents concede, the Trustee is entitled to instructions on Christopher's right to income from the 1940 inter vivos trust. And while Respondents argue to the contrary, it is my view that the Court should give instructions as to Christopher's right to a share of principal at termination. It is true that his right to share requires that he survive both his father and Mrs. Fleitas but, apart from that probability, Christopher is an income beneficiary (as hereinafter determined) and he is entitled to the benefit of a discretion which the Trustee may exercise under paragraph 3 of the agreement.[2] Since that involves use of

1. I note that as to the trust created by the 1950 codicil income is payable to the issue of Mr. Haskell, Jr. but the Trustee has not sought instruction as to this. The only question submitted concerns distribution of principal.

2. Paragraph 3 reads:
"If, during the continuance of this trust, the net income currently payable hereunder unto or for the benefit of any beneficiary, together with his or her income from other sources, should in the judgment of Trustee be insufficient to provide properly for the support, maintenance, benefit and/or education of such

beneficiary and his or her dependents, Trustee is authorized and empowered, in its sole discretion, to pay over unto or for the benefit of such beneficiary so much of the principal of any part or the whole of the trust fund from which such beneficiary may then be receiving the income or the benefit thereof as may from time to time be required to make up such insufficiency of income. The receipt of any beneficiary for any payment or evidence of the application of any payment to the benefit of any beneficiary made in conformity with the foregoing provision shall fully discharge Trustee from any further liability in connection therewith."

principal it seems to me the Trustee is entitled to know what right if any Christopher has to share in it. The question has been fully briefed and instructions now will avoid any necessity for further petitions as to Christopher's rights in this trust.

### C.

The right of an adopted child to take property under a will or trust is fixed by statute in Delaware. Prior to July 1, 1952 the Delaware statute provided for inheritance by an adopted child from his adoptive parent only.[3] Since July 1, 1952 the rights of adopted children have been fixed by 13 Del.C. §§ 919 and 920 which read as follows:

§ 919. General effect of adoption

"(a) Upon the issuance of the decree of adoption, the adopted child shall be considered the child of the adopting parent or parents, entitled to the same rights and privileges and subject to the same duties and obligations as if he had been born in wedlock to the adopting parent or parents.

"(b) Upon the issuance of the decree of adoption, the adopted child shall no longer be considered the child of his natural parent or parents and shall no longer be entitled to any of the rights or privileges or subject to any of the duties or obligations of a child with respect to the natural parent or parents; but, when a child is adopted by a step-parent his relationship to his natural parent who is married to the step-parent shall in no way be altered by reason of the adoption."

§ 920. Effect of adoption on inheritance

"(a) Upon the issuance of a decree of adoption, the adopted child shall lose all rights of inheritance from its natural parent or parents and from their collateral or lineal relatives. The rights of the natural parent or parents or their collateral or lineal relatives to inherit from such child shall cease upon the adoption.

"(b) Upon the issuance of a decree of adoption, the adopted child shall acquire the right to inherit from its adoptive parent or parents and from the collateral or lineal relatives of such adoptive parent or parents, and the collateral or lineal relatives of the adoptive parent or parents shall at the same time acquire the right to inherit from the adopted child.

"(c) Nothing contained in this section shall limit in any way the right of any person to provide for the disposition of his or her property by will. The rights of a child adopted after the making of a will by the adopting parent or parents shall be the same as the rights of an afterborn child, as prescribed in section 301 of Title 12. When the adopting parent is a step-parent, married to a natural parent, nothing contained in this section shall affect the rights of inheritance between the child and its natural parent or their collateral or lineal relatives."

Respondents argue that the trust is governed by the statutory and decisional law in effect when Mr. Haskell created the trust in 1940. They say that therefore the Court may not give a retroactive effect to the 1952 statutes which substantially changed the inheritance rights of and from an adopted child.

---

3. 41 Del.L. Ch. 187 provided in part:

"The natural parents or previous guardian shall, by such final order of adoption, be divested of all legal rights and obligations of obedience and maintenance in respect to them. Such child shall, from and after the entry of the interlocutory order herein provided for, be, to all intents and purposes, the child and heir at law of the person so adopting him or her, unless and until such order is subsequently revoked, entitled to all the rights and privileges and subject to all the obligations of a child of such person begotten in lawful wedlock; but on the decease of such person and the subsequent decease of such adopted child without issue, the property of such adopting parent still undisposed of shall descend to his or her next of kin, and not to the next of kin of such adopted child."

Generally speaking, the law in existence at the effective date of an inter vivos trust governs the interpretation thereof. It follows that the 1952 amendments to our adoption statutes may not be given retroactive effect by applying them to the construction of a 1940 inter vivos trust. Wilmington Trust Co. v. Wilmington Trust Co., 25 Del.Ch. 121, 15 A.2d 153 (1940); aff'd 26 Del.Ch. 397, 24 A.2d 309 (1942); Executive Council of Protestant Episcopal Church v. Moss, 43 Del.Ch. 379, 231 A.2d 463 (1967).

Construing the pre-1952 statute, the Delaware Courts held that an adopted child is not entitled to take, on the death of his adopted parent, property limited to the children or "issue" of such parent unless the intention that the child shall so take sufficiently appears; in short "issue" was limited to "heirs of the body," Hall v. Crandall, 25 Del.Ch. 339, 20 A.2d 545 (1941); Huxley v. Security Trust Co., 27 Del.Ch. 206, 33 A.2d 679 (1943), and Glanding v. Industrial Trust 'Co., 29 Del. Ch. 517, 46 A.2d 881 (1946). In the latter case the Supreme Court said that there was nothing in the adoption or inheritance statutes (then in effect) which provided that an adopted child should take by inheritance from its adopted parents or ancestors as if it were the lawful issue of them.

The narrow view reflected in those cases and the injustice made possible by the preference for "heirs of the body" at the expense of a person in all respects save one the child of an adopting parent, have been eliminated from Delaware law. And the very purpose of the 1952 statutes may well have been to reject the decisional law as public policy. In any event, the statutes have that effect. But, as I have indicated, *Glanding, Huxley* and similar decisions are applicable to documents executed before July 1, 1952. I find nothing in them, however, which precluded a pre-1952 trustor from including an adopted child in his giving.

The present inquiry must be to determine whether Mr. Haskell included an adopted child in his giving, i. e., as his "issue." I say this because the duty of the Court is to determine and give effect to his intent as expressed in the document creating the inter vivos trust. Bird v. Wilmington Society of Fine Arts, 28 Del.Ch. 449, 43 A.2d 476 (1945). That is the object of all rules for construction of a trust agreement as well as a will. Intention is, of course, to be determined from the language of the will as a whole and to that end the apparent meaning of particular words, phrases and provisions may be subordinated to the testamentary scheme, plan or dominant purpose, 95 C.J.S. Wills § 591.

Mrs. Barfield died in 1968 and the Trustee is now under direction to pay income to "Trustor's issue more remote than children." If the decisions in *Glanding, Hall* and similar cases are applied without any further consideration of Mr. Haskell's intention, then Christopher cannot be regarded as "Trustor's issue." A mechanical application of those cases will end this one at this point. But will that give effect to Mr. Haskell's intention—will it accomplish his dominant purpose? And what was that purpose?

Quite clearly, Mr. Haskell's dominant purpose was to benefit a class or group of persons who would not be and could not be determined until sometime in the future. He intended to give to a class or group— more distant from him than his children, which would not enjoy until after Mrs. Barfield died. (As it turned out, that was some 17 years after his own death). And he recognized that the class might vary because he gave income to those "from time to time surviving." Without doubt he intended to benefit a class which might enlarge as well as contract. This same purpose is reflected in his gift of principal: it is given to the "then" living issue of the Trustor. Thus in terms of the time of execution the group might enlarge or contract.

Under a familiar construction approach, it might be said that all of this refers merely to distribution and not to the right to take. But I think not. I am persuaded that he was dealing with more than mere identification of distributees. Thus, the language in the agreement which determines the takers if there are no issue at the time of termination, directs that principal and accumulated income go to the persons "who shall then be determined to be the distributees of Trustor by the application of the intestacy laws of the State of Delaware then in effect." Quite clearly, this refers not only to identity of the persons who are to take, but to the law which is to govern as to who shall have the right to take.

■ It seems to me that Mr. Haskell's intention was, consistently, to look to the future for determination of persons who would then have the right, under then existing law, to take the property which he had given to the Trustee. And from his language it is reasonable to infer that he was aware of the possibility of a change in the intestacy laws: he refers to such laws "then in effect." Given the prospective nature of his plan, as I read the document, it is equally reasonable to infer a recognition on his part that "issue" was likewise a term subject to change by legislation. In short, I conclude that Mrs. Haskell's intention was to give both income and principal to the persons who were his issue under the law at the time when enjoyment begins. By that test Christopher is, under 13 Del.C. § 920, "Trustor's issue" and thus a beneficiary of the 1940 inter vivos trust.

There are several aspects of the case which support this conclusion. First, a contrary result would mean that Mr. Haskell established two different legal standards by which his property might pass: 1940 law if it went to his issue, the law on some unknown date in the future if it did not go to his issue. I think he did not intend that those kind of alternatives should govern who would take his property. Second, beyond doubt, Christopher would take as the Trustor's intestate heir and, given that certainty, it is illogical to suppose that Mr. Haskell did not intend him to share as "issue." In short, it is hard to believe that Mr. Haskell intended that the child should take if he were an intestate heir, but not if he were regarded as "issue." It seems to me that any analysis which would permit such a result would be as illogical as it is unrealistic. Third, Christopher is Mr. Haskell, Jr.'s son for all purposes and I cannot ascribe to Mr. Haskell an intention to exclude his son's child, particularly in view of his own demonstrated generosity to those not related by blood.

\* \* \*

In the approach I have taken it is unnecessary to decide other issues argued by counsel. I have not relied in any way on the deposition of Richard B. Barker, Esquire.

An order will be entered, (a) answering questions 1 and 2 (as stated above) in the affirmative and instructing the Trustee to act accordingly, and (b) declining to answer questions 3, 4, 5 and 6 on the ground that the Trustee is not entitled to instructions at this time.

### On Motion for Reargument

■ The Trustee moved for reargument as to Christopher's right to share in accumulated and undistributed income under the terms of the trust established by the codicil of April 24, 1950. It says that instructions are of present exigency because the oldest child of Mr. Haskell, Jr., is now twenty-one years of age and entitled to a portion of such income. Without instructions as to Christopher's interest, the Trustee is unable to determine the size of the interest of the oldest child. Both Guardians consented to the motion which was submitted on the existing briefs. I conclude that the Trustee is entitled to the instructions it seeks.

The plan in the 1950 codicil is similar to that adopted by the 1940 inter vivos trust. Income is payable to "the issue of" Mr. Haskell, Jr., not "Trustor's issue", but, again, it is payable to those issue "from time to time surviving"; if "there shall be no issue" of Mr. Haskell, Jr., then it is payable to the issue of Mrs. Fleitas. At Mr. Haskell, Jr's., death, principal is distributable to his "then living issue". If there are no such issue "then living", principal is distributable to the issue of Mrs. Fleitas and, failing that, the Testator gave principal "unto such living persons or persons who shall then be determined to be the distributees of my son, HARRY G. HASKELL, JR., by application of the intestacy laws of the State of Delaware in effect at the time of his death".

As I have emphasized, the duty of the Court is to determine the intention of the Testator. It is abundantly clear that he intended to benefit those persons who were or who would be the issue of his son. It is equally clear that he expected that group or class to expand as time went on and, indeed, that has been the case. (Mr. Haskell, Jr., had one child at the date of his father's death; he now has eight.)

Mr. Haskell's intention, consistently, was to look to the future for the determination of which person or persons would take or share in his property. This is true of the "class", it is true as to intestate takers. And I conclude that it is equally true as to an adopted child. The law governing the right of inheritance of adopted children is fixed by 13 Del.C. §§ 919, 920 and, by the terms of those statutes, Christopher, clearly, is an "issue" of Mr. Haskell, Jr. And since he is an issue he is a beneficiary of the 1950 codicil to the will of Mr. Haskell, Sr.

Since Christopher is an income beneficiary, he is also entitled to whatever discretionary distributions the Trustee may determine to make under the provisions of Article Eighth.