The RIGGS NATIONAL BANK OF WASH-INGTON, D. C. and Edward H. Porter, Jr., Trustees under the Will of Willard Saulsbury, Petitioners,

v.

Ruth Anna ZIMMER et al., Respondents.

Court of Chancery of Delaware, New Castle.

March 22, 1973.

of the Testator's grandnephew, Willard Saulsbury, III (Zimmer respondents), and Susan M. Higel, an adopted daughter of one of the descendants. This is the decision on cross motions for summary judgment.

Rodney M. Layton, and Richard G. Elliott, Jr., Richards, Layton & Finger, Wilmington, and Frederick M. Bradley, Hogan & Hartson, Washington, D. C., for The Riggs National Bank of Washington, D. C., and Edward H. Porter, Jr., Trustees.

William S. Potter, Charles S. Crompton, Jr., Michael D. Goldman, and Steven R. Karlsen, Potter, Anderson & Corroon, Wilmington, for Ruth Anna Zimmer and certain other respondents.

Andrew G. T. Moore, II, Killoran & Van Brunt, Wilmington, for certain minor and other respondents.

Johannes R. Krahmer, Morris, Nichols, Arsht & Tunnell, Wilmington, for Lillian P. Hunter and certain other respondents.

Wayne N. Elliott, Prickett, Ward, Burt & Sanders, Wilmington, guardian ad litem for Susan M. Higel.

Arthur L. Rocklin, Rocklin & Rocklin, Baltimore, Md., for respondent Mary Lou Ponder Goembel.

Paul R. Reed, Georgetown, for respondent James H. Ponder.

DUFFY, Chancellor:

The Riggs National Bank of Washington, D. C. and Edward H. Porter, Jr., trustees under the will of Senator Willard Saulsbury (petitioners) seek instructions as to the distribution of trust corpus. Respondents are certain descendants of the Testator's grandfathers who were living on the date of the Testator's death (Hunter respondents) and/or on the date of death

A.

The Testator signed his will on June 18, 1926 and a codicil on January 11, 1927. The basic plan provided for payment of debts and taxes, bequest of a desk, devise of the Saulsbury farms in Kent County, gifts to churches and charities and a life interest in the residue to the Testator's widow. The remainder was given to a residuary trust with income and principal to be applied to pay bequests and annuities to named relatives. All income and principal not so applied was ordered accumulated and paid over absolutely, free and discharged from trust, to that son of Willard, III, who first attained the age of twenty-one years. The Testator then directed:

"Should the said Willard Saulsbury have no son or have no son who shall attain the age of twenty-one years, then and in that event I direct my trustees to pay the rest, residue and remainder of the trust estate as aforesaid to the respective descendants of William Saulsbury and John Ponder my two grandfathers in equal shares *per capita* upon the death of the survivor of the other beneficiaries of the said trust now living or upon the death of the survivor (if more than one) of the sons of the said Willard Saulsbury before attaining the age of twenty-one years—whichever shall last occur."

Willard Saulsbury died on February 2, 1927, his wife died in May 1927, and his grandnephew, Willard, III (Bud), died on July 21, 1971 without producing a son. Thus the last contingency, and presumably the one he wanted least, came to pass. And with it came the uncertainties which prompted the bill for instructions.

## B.

The complaint seeks instructions on two questions:

(1) Is the class of descendants to be determined as of the date of the Testator's death (1927) or as of the date of death of Willard, III (1971)?[1]

(2) If the class is to be determined as of 1971, is Susan M. Higel, an adopted child of one of the descendants, to be included in the class?

## C.

It is settled law in Delaware that, in the absence of a clear and unambiguous manifestation of contrary intent, next of kin are determined as of the date of death of the ancestor and not as of the date of death of the life tenant. That has just been restated by the Supreme Court in affirming a decision by this Court. Bank of Delaware v. Bank of Delaware, Del.Ch., 289 A.2d 639 (1972), aff'd Del., 301 A.2d 280 (1973). However, as our Courts have said, this is a rule of construction only and does not apply when the instrument, taken as a whole, manifests, clearly and unambiguously, an intent on the part of the testator to have his next of kin determined as of the date of death of the life tenant. Delaware Trust Company v. McCune, Del. Ch., 269 A.2d 256 (1970), aff'd, Del., 280 A.2d 534 (1971) sub nom., Bank of Delaware v. Delaware Trust Company.

Here, Senator Saulsbury provided for all contingencies but he did not clearly state on which of the two possible dates the class of descendants was to be determined. The trustees' first question thus calls for construction of the will with the object of ascertaining and giving effect to the intent of the Testator as shown by the provision in question and the instrument as a whole. Bird v. Wilmington Society of Fine Arts, Del.Supr., 28 Del.Ch. 449, 43 A.2d 476 (1945); Delaware Trust Co. v. Delaware Trust Co., Del.Ch., 33 Del.Ch. 135, 91 A.2d 44, 38 A.L.R.2d 318 (1952). The search, in the language of Bird, is for the "true meaning and intent of the testator". Any judicially created rule of construction must be subordinate to that objective. And so must the rule as to early vesting. Sussex Trust Co. v. Joseph, Del.Ch., 1 A.2d 614 (1938).

The Hunter respondents urge that since the Testator's intent is unclear, early vesting is strongly favored and the class of descendants must be determined by application of the rule of construction stated in Bank of Delaware, i. e., as of the Testator's death. They argue that membership in the class includes only those Saulsbury-Ponder descendants living on February 2, 1927 and, under Stabler v. Ramsey, Del. Ch., 30 Del.Ch. 439, 62 A.2d 464 (1948), rev'd on other grounds, 32 Del.Ch. 547, 88 A.2d 546 (1952), a vested remainder was created in them; they say that membership in the class closed with the Testator's death. Restatement of Property § 294. The Zimmer respondents and the guardian for Miss Higel argue that the will shows a clear intention to have the class determined as of the date of Willard, III's death, and that this intent precludes the application of any rule of construction.

Under the Bank of Delaware rule the class of descendants is to be determined as of the date of Senator Saulsbury's death, 1927, unless he clearly manifested an unambiguous intent to have the determination made as of a later date. The Hunter respondents have the benefit of that rule and they must prevail, absent the explicit finding which is required for a different date.

1. Establishing the genealogy in this case has its own special problem for which the trustees have required expert assistance. William Saulsbury died in 1831 and John Ponder died in 1863. At the Testator's death in 1927 he was survived by at least nineteen descendants of his grandfathers Saulsbury and Ponder. By the time Willard, III died in 1971 only six of those descendants were still living; meantime at least twenty-five more had been born and were still living.

In trying to ascertain intent, we must focus on time: what time or date did the Testator have in mind when he was, in Judge Rodney's phrase, seated at his desk and providing for the last contingency? Clearly he did not know which class would take—indeed, the record shows that he hoped that neither would. He wanted the balance of his estate to go to a child not yet born but of whom he dreamed and for whom he planned. We know that the object of his bounty was to be a child of his grandnephew, that the child was to be a boy and that the boy was to be twenty-one years old. And in giving to that child the Testator had a purpose, which I have set out in the footnote.[2]

At the time when the Testator wrote his will, Bud Saulsbury was nineteen years of age and unmarried. And it was his son (to be) whom the Testator chose to be, as Vice Chancellor Marvel observed in a recent opinion involving this same estate, the "primary remainderman", In re Trust Estate of Saulsbury, Del.Ch., 233 A.2d 739 (1967). Beyond doubt the Testator looked to the future in making that selection. Indeed, in making the selection he conditioned it upon an event which by his own definition could not occur for twenty-one years. That manifests, clearly and unambiguously, an intention to have the beneficiary determined long after he wrote the will and, in the ordinary course of events, long after he had died.

The devise of the Saulsbury farms in Kent County manifests an equally significant intent as to both future events and beneficiaries. Thus the Testator gave a life estate in the farms to his cousin, James, followed by a life estate to James'

son (Bud) and then in fee simple "to the eldest son [of Bud] then living". In the absence of such a son the fee was given "to the eldest male descendant" of Bud and, in default thereof, then "to the eldest female descendant" of Bud. Again, the primary remainderman of these two to three hundred acres of land could not be known, in the ordinary course of events, for more than two decades after the Testator wrote his will.

It is against these specifics that one must read the critical clause in the will. When the Testator came to his alternative plan he based this on the proviso that should Willard, III, "have no son or have no son who shall attain the age of twenty-one years". Certainly these were events unrelated to the Testator's death. They concerned future events, i. e., Willard, III's death or failure of a son of his to reach age twenty-one. And, said the Testator, "then" and "in that event" the remainder goes to the Saulsbury-Ponder descendants. Whatever these words may mean in other instruments, I am satisfied that they here reflect an intention to give to persons determined when the event comes to pass. And the *per capita* distribution with its implicit equality among all beneficiaries confirms this.

Under *Bank of Delaware* and the cases which precede it, the true intention of the Testator is to be ascertained not from specific passages alone, but from the entire will as well. And an overview confirms what I believe is implicit in the language I have discussed. Taking the will as a whole, I find two significant purposes manifested therein: first, the Testator in-

2. The Testator was of a family which had given distinguished public service to Delaware for a century or more. Each of his grandfathers had been a Governor of Delaware, three Saulsburys had served in the United States Senate (including the Testator himself), one Saulsbury had served as Chancellor of Delaware. The Testator and his wife were childless but he hoped for more public service to Del-

aware from a future Saulsbury and it was with that in mind that he planned the gift. He wanted that beneficiary to be financially independent so that he could carry on the family tradition of public service. And, as Senior Judge Biggs indicated in his deposition, the Testator believed that no office in the State, or the National, would be beyond reach of the boy thus to be endowed.

tended that his estate be kept intact for a long period of time after his death and, second, with the exception of the gifts to church and charity, he intended to benefit members of the Saulsbury and Ponder families, only. The gifts of farms and heirlooms, for example, show an intent to keep both within the family for as long a period as possible. Indeed, as to the personalty, he ordered that this be "strictly preserved for and delivered to" members of the respective families.

When the specific provisions of Senator Saulsbury's will are read, and one looks at the overall plan, I conclude that he manifested clearly and unambiguously an intent to have the class of descendants determined as of a future date and not as of the date of his death. That manifestation, coupled with the contingent nature of the interest created by the will in the descendants, excepts the case from the rule of construction ordinarily applied in determining when the class is fixed. Compare Delaware Trust Company v. McCune, supra. The events determined the precise date and, as these came to pass, it is 1971.

The Hunter respondents contend that the Testator intended to benefit only those blood relatives actually known by him. The fallacy in this argument is obvious, since the primary purpose of the trust was to benefit, at age twenty-one, a son-to-be of Willard, III, then age nineteen. Thus, the primary beneficiary of the trust was an individual unknown to the Testator. Since the Testator selected an "unknown" as his primary remainderman, it seems of little consequence that many of the descendants under the 1971 date are similarly "unknowns".

I find nothing to indicate that the Testator intended to benefit the class of Saulsbury-Ponder descendants living on the date of his death, other than in the ways stated plainly in the will. And a significant limitation is clear as to those gifts: most of them are limited to life interests—they end with the death of a beneficiary. If, as argued by the Hunter respondents, the class is determined as of the date of the Testator's death, then every life beneficiary named in the will would also be included in that class of descendants even though all of them would necessarily have to die before distribution of corpus. It would be incongruous to say that the Testator intended to benefit blood relatives living at his death while, at the same time, conditioning the receipt of such benefit on the death of the beneficiary. And any distribution to the estate of such a descendant would exceed the specific limitation to a life interest.

Finally, I think it should be pointed out that the Testator knew that there would be a long delay before trust corpus would be distributed. Given that fact, the reasonable inference is that he knew that some of his then living blood relatives would probably die in the interim. And certainly he had no control of the disposition they would make, in or out of his blood line. If, therefore, the class of descendants is determined as of the date of the Testator's death, his intent to benefit only blood relatives will be frustrated.[3] I am confident that he did not want that. On the contrary, it is clear that the scheme of the will (with the exceptions as to church and charity) was to benefit only living persons within the blood line or related to the Testator by marriage. Compare Delaware Trust Company v. McCune, supra.

I conclude that under the clear and unambiguous intention of the Testator the class of descendants is to be determined as of July 21, 1971, the date of the death of Willard Saulsbury, III.

### E.

I turn now to the question of whether Susan M. Higel, an adopted daughter of

3. Compare Hall v. Crandall, Del.Ch., 25 Del.Ch. 339, 20 A.2d 545 (1941), which defines "issue" as "descendants", that is, "heirs of the body".

one of the descendants of John Ponder, is to be included in the class of beneficiaries fixed as of July 21, 1971. Susan was born in 1958.

The right of an adopted child to take property under a will or trust is fixed by statute in Delaware. Before July 1, 1952 the Delaware statutes provided for inheritance by an adopted child from an adoptive parent, only. See 41 Del.L., Ch. 187, and 17 Del.L., Ch. 612. Since that date an adopted child has a right to inherit from collateral or lineal relatives of an adoptive parent. 13 Del.C. § 920.

The guardian argues that if the class of descendants is determined as of 1971, the Delaware statutes in effect at that time should also apply. The Hunter and Zimmer respondents say that the law in effect at the time of execution of the will should control.          .

▉    The Supreme Court's opinion in Haskell v. Wilmington Trust Company, Del.Supr., 304 A.2d 53 (1973), affirming the decision of this Court (282 A.2d 636) states the rule applicable here: "[i]f a will . . . makes a gift to 'heirs' or 'next of kin' after the expiration of a life estate, the remainder beneficiaries are normally determined by the law in effect at the date of the [death of the] life tenant." The Court applied that rule to an adoption case in which the instrument was executed before the 1952 statute became effective and the life estate ended after it be-

came effective. That is this case, precisely. Senator Saulsbury made a gift to a class (of Saulsbury-Ponder descendants), the membership in which was ascertainable at an indefinite future time; he is therefore regarded as having contemplated the change in the adoption law prior to that time and is presumed, in the absence of any contrary context in the will, to have intended that the 1952 adoption statute be resorted to in determining membership in the class. Haskell v. Wilmington Trust Company, supra.

While the Testator manifested an intent to benefit only members of the Saulsbury and Ponder families, with certain exceptions already noted, I find nothing in his will showing an intent that existing statutes not be referred to for determining membership in the class. It follows that Susan is to be considered as a "descendant" of the Testator's Saulsbury-Ponder grandfathers.

Many other arguments were made in the briefs which were filed, including those based upon an analysis of the precise nature of the interest created under the will (vested remainder subject to defeasance *vis-a-vis* an executory interest *vis-a-vis* an alternative contingent remainder, for example). I have considered all arguments but I do not find it necessary to discuss them in traditional future interest terms in stating the reasons for the conclusions I reach.

Order on notice.