WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Petitioner,

v.

George F. HUBER et al., Respondents.

Court of Chancery of Delaware, New Castle.

Oct. 19, 1973.

Rodney M. Layton and Wendell Fenton, Richards, Layton & Finger, Wilmington, for petitioner.

S. Samuel Arsht and Paul P. Welsh, Morris, Nichols, Arsht & Tunnell, Wilmington, for respondents Jewel H. Benz, Beverly Benz, Allan Oberly Benz, Margot H. Nicholson, Alberta K. Nicholson and Georgia H. Nicholson.

Melvyn A. Woloshin, Woloshin & Tenenbaum, Wilmington, for June H. Boush, Franklin S. Huber, and Sharon Boush.

MARVEL, Vice Chancellor:

The six irrevocable inter vivos trusts here in issue were separately created in May 1951, five by either George F. Huber or his wife Elsie, and the sixth by their son George as trustors for the benefit of their grandchildren and children respectively. In 1952, a statute [1] was enacted under the terms of which an adopted child acquired the right to inherit not only from his adoptive parent but also from the collateral or lineal relatives of an adoptive parent. This statute has been held to apply to a pre-1952 inter vivos trust in a case in which the trustor's issue more remote than children was held to include an adopted child of the trustor's natural born son, Wilmington Trust Co. v. Haskell (Del.Ch.), 282 A.2d 636, aff'd (Del.Supr.), 304 A.2d 53. Compare Riggs National Bank v. Zimmer (Del.Ch.), 304 A.2d 69.

Wilmington Trust Company, the trustee of each of the aforesaid trusts, has petitioned for instructions as to whether or not to treat June H. Boush and Franklin S. Huber, adopted children of George F. Huber, Jr., as children of such settlor and grandchildren of George F. Huber and his wife Elsie, such designations having been used by the settlors in the trust instruments here in issue in naming a class of income beneficiaries of said trusts. If such adopted children are to be treated as if they were natural born children and grandchildren, they are, of course, entitled to share in the income distributions here in issue.

The trust created by George F. Huber, Jr., on May 31, 1951 provided for payments of income to each child of the settlor who shall have attained the age of twenty-one. Trustor's natural born child Margot became twenty-one on April 5, 1964. From that date until after her father's death she received the full net income of such trust to the exclusion of her adopted brother and sister. On the basis of such practice, counsel for the issue by blood argue that such practical construction of such trust supports their position as to its true meaning. However, this position does not take into account the effect by the 1952 statute.

When the 1951 trusts were created, Mr. and Mrs. George F. Huber were the parents of two children, namely George F. Huber, Jr., and Jewel Huber Benz, both of whom were then married. The issue of said marriages are Beverly Benz and Allan O. Benz, who are the natural born children

---

[1]. "Upon the issuance of a decree of adoption, the adopted child shall be considered the child of the adopting parent or parents * * * as if he had been born in wedlock to the adopting parent or parents," 13 Del.C. 919(a).

"Upon the issuance of a decree of adoption, the adopted child shall acquire the right to inherit from its adoptive parent or parents and from the collateral or lineal relatives of the adoptive parent or parents, and the collateral or lineal relatives of the adoptive parent or parents shall at the same time acquire the right to inherit from the adopted child." 13 Del.C. § 920(b).

of Jewel Huber Benz, and Margot Huber Nicholson, the natural born child of George Huber, Jr. In 1963, George Huber, Jr., remarried, his second wife being the former June Boush, and in 1964 he adopted Franklin S. Huber and June H. Boush, his second wife's natural born children by a previous marriage.

This is the decision of the Court on cross motions for summary judgment, one on behalf of the natural born grandchildren of Mr. and Mrs. George F. Huber and the natural born child of George F. Huber, Jr., and the other on behalf of the adopted children of George Huber, Jr. on the question of who are the grandchildren of Mr. and Mrs. George F. Huber and child or children of George Huber, Jr., on the questo to receive net income earned in the trusts in issue.

In 1951, the year the trusts here in issue were executed, the law of Delaware, which historically has stressed the tradition of descent by blood, was to the effect that the words children and grandchildren 'meant natural born children and grandchildren, unless an intention that an adopted child " * * * shall so take sufficiently appears * * *", Wilmington Trust v. Haskell (Del.Ch.), supra, Hall v. Crandall, 25 Del.Ch. 339, 20 A.2d 545, and Glanding v. Industrial Trust Co., 29 Del.Ch. 517, 46 A.2d 881. However, the meanings of the words child and grandchild were, as noted above, changed by statute in 1952 so as to grant to adopted children the same rights to inherit from lineal or collateral relatives as that possessed by natural born children, 13 Del.C. § 919(a) and § 920(b). However, 13 Del.C. § 920(c) goes on to provide:

"Nothing contained in this section shall limit in any way the right of any person to provide for disposition of his or her property by will. * * *"

Compare Carlisle v. Delaware Trust Company, 34 Del.Ch. 133, 99 A.2d 764.

In support of their motion for summary judgment in favor of the natural born grandchildren of Mr. and Mrs. George F. Huber and the natural born child of George F. Huber, Jr., counsel rely on discovery taken by them which tends to establish that when Mr. and Mrs. George F. Huber as well as their son executed the 1951 trust indentures here in issue, they had no intention of ultimately benefiting any child the son might adopt. However, the critical question to be considered here is whether or not such proffered extrinsic evidence, which is not contradicted, is admissible for the purpose of deciding the pending motions, a question which requires a judgment as to whether or not the adopted children of George F. Huber, Jr., have rights equal to those of blood descendants and are therefore to be included as income beneficiaries of the trusts here in issue.

■■■ In support of their contention that evidence of the trustors' actual intent should be considered on the pending motions, counsel for the natural born children point to the anomaly implicit in the contention of counsel for the adopted children, namely that the previously unambiguous words, child and grandchild, have by the terms of the 1952 statute acquired a totally different meaning which is also allegedly unambiguous, thus defeating the purpose of the trustors. The point is, however, that despite the drastic change wrought by the statute on previously established law, the words in issue are not, in my opinion, ambiguous and may not be explained away. Were there any ambiguity in the present meaning of the words employed by Mr. and Mrs. George F. Huber and their son in making their choice of trust beneficiaries, I would of course agree that extrinsic evidence disclosing the trustors' actual intent must be considered in reaching a judgment in this case. However, because of the effect of the 1952 statute and applicable case law, there would appear to be no basis for the admission of extrinsic evidence to establish the trustors' claimed actual intent. Thus, statements by a settlor as to his intentions are not admissible when they con-

tradict express provisions of a trust instrument which is plain and clear, Cleveland Trust Co. v. Wilmington Trust Co. (Del. Supr.), 258 A.2d 58. See also Scott on Trusts (3rd Ed.) § 164.1 where it is stated:

"As to any matter expressly covered by the instrument, the provisions of the instrument, if unambiguous, determine the terms of the trust. In such a case, extrinsic evidence in the absence of fraud or mistake is not admissible to vary or add to the terms of the instrument."

■ In short, while the meaning of the words which the present trustors chose to designate the income beneficiaries of the trusts here in issue has been drastically changed by legislative fiat, the law is to the effect that a trustor is presumed at the time of the creation of a trust indenture to understand that a statute fixing the rights of an adopted child is subject to change in futuro, and in making a determination as to whether or not the present trustors intended not to be bound by future statutory changes, the trust instrument itself is the sole source of such intent, Wilmington Trust Company v. Haskell, supra. In the cited case the Supreme Court of Delaware, as noted above, affirmed a finding of the Court below to the effect that the adopted child of a natural born son of a trustor qualified as issue of the trustor, the Court stating:

"The Trustor is presumed to have realized that this statute (the pre-1952 adoption statute) was subject to later change. Since the ultimate beneficiaries

were to be determined at some indefinite future time, and since the instruments[2] exhibit no intent to the contrary under the rule[3] we have set forth, the Trustor is presumed to have intended that the law in effect at the time the beneficiaries were to be determined is to be applied.

\*   \*   \*   \*   \*   \*

"We therefore conclude that Christopher (the adopted child) qualifies as 'issue' of Trustor as the term is used by him in the trust instruments."

■ Next, because the trustors here involved first failed unequivocally to provide in the irrevocable trusts in issue that descendants by blood were to be the sole object of their bounty and secondly failed to include in the instruments here in issue a right to vary dispositive provisions of such trusts, the avowed intent of the trustors to benefit blood descendants to the exclusion of adopted children cannot be written into the instruments in issue by way of modification, Bogert, Trusts and Trustees, § 992. See also Bird v. Wilmington Society of the Fine Arts, 28 Del.Ch. 449, 43 A. 2d 476, in which it is stated: "It is not the function of the Court to make a will for the testator or to improve on the will as found."

It follows that the motion for summary judgment of the adopted children and grandchildren must be granted and that of the natural born child and grandchildren denied.

Order on notice.

"\*   \*   \*   unless the documents themselves demonstrate a clear intent on the part of the creator to limit the class as it was defined by law on the date of execution of the trusts." Wilmington v. Haskell (Supr.Ct.), supra.

2. Rudolph's Will, Sur., 123 N.Y.S.2d 731, in which extrinsic evidence was admitted to explain the intended meaning of the word children, is at odds with the ruling of the Supreme Court of Delaware.

3. A class is normally to be determined following a life interest under the law as it exists on the date of ascertainment.