Nancy W. JACKSON et al., Respondents Below, Appellants, and Cross Appellees,

v.

The RIGGS NATIONAL BANK OF WASHINGTON, D.C. and Edward H. Porter, Jr., Trustees under the Will of Willard Saulsbury, Petitioners Below, Appellees, and Cross Appellees,

and

Ruth Anna Zimmer et al., Respondents Below, Appellees and Cross Appellants.

Supreme Court of Delaware.

Nov. 27, 1973.

Paul R. Reed, Georgetown, for James H. Ponder.

Arthur L. Rocklin, of Rocklin & Rocklin, Baltimore, for Mary Lou Ponder Goembel.

Rodney M. Layton, of Richards, Layton & Finger, Wilmington, for The Riggs National Bank of Washington, D. C. and Edward H. Porter, Jr., Trustees.

Johannes R. Krahmer, of Morris, Nichols, Arsht & Tunnell, Wilmington, for Nancy W. Jackson, Executrix of Estate of William McDowell Ponder and others.

William S. Potter and Charles S. Crompton, Jr., of Potter, Anderson & Corroon, Wilmington, for Ruth Anna Zimmer and others.

Andrew G. T. Moore, II, of Killoran & Van Brunt, Wilmington, for James W. Ponder, III and others.

Mason E. Turner, Jr., of Prickett, Ward, Burt & Sanders, Wilmington, for Wayne N. Elliott, Guardian Ad Litem for Susan M. Higel.

Before HERRMANN, C. J., and CHRISTIE and WALSH, Judges.

HERRMANN, Chief Justice:

This appeal is from rulings by the Chancery Court upon the petition of testamentary trustees for instructions as to the proper distribution of the trust corpus.

## I.

The case involves the Will of the late Senator Willard Saulsbury, executed in 1926. The basic estate plan provided for charitable gifts, a devise of certain farmland, and a life interest in the residue to the Testator's widow. The remainder was left to a residuary trust, with income and principal to be applied to bequests and annuities for named relatives. All income and principal not so applied were ordered accumulated and paid over, free and discharged from trust, to the son of Willard Saulsbury, III (the Senator's grandnephew) who first attained the age of twenty-one years. The Testator then directed:

"Should the said Willard Saulsbury have no son or have no son who shall attain the age of twenty-one years, then and in that event, I direct my trustees to pay the rest, residue and remainder of the trust estate as aforesaid to the respective descendants of William Saulsbury and John Ponder my two grandfathers in equal shares *per capita* upon the death of the survivor of the other beneficiaries of the said trust now living or upon the death of the survivor (if more than one) of the sons of the said Wil-

lard Saulsbury before attaining the age of twenty-one years—whichever shall last occur."

Senator Saulsbury died in February 1927; his wife died in May 1927; Willard, III died in 1971 without having had a son.

The trustees sought instruction upon two questions:

(1) Is the class of descendants of the Testator's grandfathers [1] to be determined as of the date of the Testator's death (1927) or as of the date of death of Willard, III (1971)?

(2) If the class is to be determined as of 1971, is Susan M. Higel, an adopted child of one of the descendants, to be included in the class?

The Chancery Court held (1) that the class of descendants is to be determined as of the date of the death of Willard, III, in 1971; and (2) that the adopted child is to be considered a member of the class. The opinion below appears at 304 A.2d 69.

The "Jackson (formerly Hunter) respondents" appeal the ruling in favor of the 1971 class.

The "Zimmer and Ponder respondents", who prevailed below upon the date question, cross-appeal the ruling as to the adopted child.

## II.

We agree with the conclusion of the Chancery Court that the Will of Senator Saulsbury, taken as a whole, manifests clearly and unambiguously an intent on the part of the Testator to benefit living members of the Saulsbury and Ponder families only; that the implementation of that intent requires that the class of descendants be determined as of 1971 rather than 1927. We have reviewed the reasoning of the Chancery Court, in the light of the detailed critique thereof by the Jackson respond-

---

1. Grandfather William Saulsbury died in 1831; grandfather John Ponder died in 1863.

ents. We agree with the result reached on this question for the reasons stated by the Court below.

The manifest testamentary plan of Senator Saulsbury, to keep his estate intact as long as possible and to channel the estate down through living members of the Ponder and Saulsbury families for as long as practical, can be implemented only through the 1971 class. A ruling in favor of the 1927 class would defeat that manifest purpose by permitting the estates of now deceased persons to share in the remainder, thus allowing their interests to pass to strangers outside the family lines.

The Jackson respondents, contending that the descendants of Senator Saulsbury's grandfathers entitled to share in the distribution of the trust estate be limited to those alive in 1927, urge that distribution of the shares of those now deceased be made to their personal representatives, beneficiaries, or next of kin. To so hold would benefit estates of deceased relatives and unrelated persons, and would permit a large part of the Testator's estate to pass out of the Saulsbury-Ponder families in direct contravention of his manifest intent. It is clear that a large part of the estate will pass to strangers if the 1927 class were to prevail. The genealogical report, part of this record, establishes that all or part of 11 of the 19 shares which would be distributed under a 1927 class determination, would be permitted to devolve to strangers outside the family lines.[2]

Accordingly, we affirm the conclusion of the Chancery Court as to the intent of the Testator upon this issue. It is our opinion that the language of the Will, viewed in its entirety, is abundantly clear to warrant the conclusion reached.

## III.

We agree with the conclusion of the Chancery Court (304 A.2d at 74) that Susan M. Higel, an adopted child of one of the 1971 class of Ponder descendants, is to be included in the class.

Controlling is the recent decision of this Court in Haskell v. Wilmington Trust Company, et al., Del.Supr., 304 A.2d 53 (1973). The rule is there stated:

"* * * the applicable law to the determining of a class following the termination of a life interest is the law as it exists on the date of ascertainment, unless the documents themselves demonstrate a clear intent on the part of the creator to limit the class as it was defined by law on the date of execution of the trusts.

\*   \*   \*   \*   \*   \*

"* * * Since the ultimate beneficiaries were to be determined at some indefinite future time, and since the instruments exhibit no intent to the contrary under the rule we have set forth, the Trustor is presumed to have intended that the law in effect at the time the beneficiaries were to be determined is to be applied."

The Ponder and Zimmer respondents ask whether the rule of Haskell is a "rule of silence" which can only be overcome by an express rejection of future law in the Will. The answer is that the Haskell rule does not require such express rejection. The "clear intent" to reject the operation of future law under Haskell may be ascertained, as in other matters of in-

2. Perhaps the most ironic consequence of a 1927 distribution, in view of the manifest purpose of the Testator, would result from the allocation of a $\frac{1}{19}$ share to William Saulsbury. He died in 1944, leaving his estate to his wife, Annie. His share would thus pass under her Will probated in 1952, which provides for one Mrs. Knapp to "take all my birds, cages, provisions and other equipment for them as soon as possible after my death", and bequeaths to Mrs. Knapp the sum of $1,000, for the care of these birds. The residue is left to Elsie Merrill Cox of Baltimore upon the condition that she shall attend the testatrix' funeral in California. "If for any reason she does not", provides the Will, then the residue is to go to Mrs. Knapp.

tent, from the entire language and tenor of the Will; but the intent to reject the operation of future law must be clear and unambiguous in order to overcome the *Haskell* presumption.

 The "future law" here involved is 13 Del.C. §§ 919 and 920 (1952).[3] The public policy of our State, reflected thereby, is that adopted children are to be considered under the law as natural children. Under that policy and operation of that law, Susan M. Higel is a member of the Ponder family for all intents and purposes here involved; and the law that granted her that status was in effect at the time the class of remainderman was determined.

The question then comes down to this: does the Will of Senator Saulsbury demonstrate a clear and unambiguous intent to exclude an adopted child who has, in the eyes of the law, become a full and equal child of the Ponder family? We think not. The basic finding of the Chancery Court was that the Testator "intended to benefit members of the Saulsbury and Ponder families only". (304 A.2d at 69) By operation of law, Susan meets that qualification.

 The Zimmer and Ponder respondents point to the several references by the Chancery Court to the Testator's intent to benefit his "blood relatives" and "blood line". (304 A.2d at 73) Those references are not, in our opinion, fatally inconsistent with the conclusion that the Will does not demonstrate clearly and unambiguously an intent to reject the status held by Susan as a child of the Ponder family. The overriding intent of the Testator was to keep

the estate in the family. A sharing by Susan does not violate that intent.

The Court below correctly concluded that Susan M. Higel is a member of the 1971 class of descendants.

The Order below is affirmed.

---

3. 13 Del.C. § 919(a) provides:

"(a) Upon the issuance of the decree of adoption, the adopted child shall be considered the child of the adopting parent or parents, entitled to the same rights and privileges and subject to the same duties and obligations as if he had been born in wedlock to the adopting parent or parents."

13 Del.C. § 920(b) provides:

"(b) Upon the issuance of a decree of adoption, the adopted child shall acquire the right to inherit from its adoptive parent or parents and from the collateral or lineal relatives of such adoptive parent or parents, and the collateral or lineal relatives of the adoptive parent or parents shall at the same time acquire the right to inherit from the adopted child."