WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Trustee under Trust Agreement with Philip D. Laird, dated April 23, 1932, et al., Petitioners,

v.

Richard D. CHICHESTER et al., Respondents.

Court of Chancery of Delaware, New Castle.

Submitted June 11, 1976.

Decided Oct. 26, 1976.

William S. Potter and Peter M. Sieglaff, Potter, Anderson & Corroon, Wilmington, for petitioners.

Thomas P. Sweeney, Richard G. Elliott, Jr., and Richard G. Bacon, Richards, Layton & Finger, Wilmington, for Richard D. Chichester, Sarah C. Galloway, Ridgely B. Chichester, Anne K. Aquadro and Frederick E. Klutey, Jr.

Johannes R. Krahmer and David Ley Hamilton, Morris, Nichols, Arsht & Tunnell, Wilmington, for Gordon C. Keys and Mary Cook Stewart Brusnighan.

BROWN, Vice Chancellor.

This case arises on a petition for instructions brought by Wilmington Trust Company in its capacity as trustee under both an *inter vivos* trust and a testamentary trust created by Philip D. Laird and also as executor of the estate of his deceased wife, Lydia C. Laird. A common question of law is presented as to all three fiduciary relationships. The several respondents have moved for summary judgment against each other as their claimed interests appear, and this is a decision on the cross-motions after briefing and oral argument.

On April 23, 1932, by agreement with Wilmington Trust Company, Philip D. Laird created an *inter vivos* trust which directed the trustee to pay the income to his wife, Lydia C. Laird, for life and upon her death, if there were no issue of Philip D. Laird then living, to divide the corpus into four equal parts and to assign one of such parts to his mother-in-law, Eliza Chichester, if she be then living or, if not, then

". . . unto the then living issue of Trustor's said mother-in-law, Eliza Chichester, per stirpes and not per capita . . . ."

Philip D. Laird died without issue on December 26, 1947, leaving a last will and testament which created a residuary trust which again directed Wilmington Trust Company, as trustee, to pay the income to his wife, Lydia, for life and, upon her death, to assign and deliver

"One-fourth thereof unto the then living issue of my wife's deceased mother, Eliza M. H. Chichester per stirpes and not per capita . . . ."

Lydia C. Laird died without issue on September 2, 1975, leaving a last will and testament which, by Article Fourth, bequeathed the sum of $150,000 unto

". . . such of my deceased mother's issue who shall survive me, per stirpes and not per capita."

By Article Ninth Lydia C. Laird devised and bequeathed her residuary estate unto

". . . such of the issue of my deceased mother, Eliza M. H. Chichester, as shall survive me, per stirpes, and not per capita."

Thus, the ultimate disposition of the assets covered by the above provisions must be made by Wilmington Trust Company to the issue of Eliza M. H. Chichester who survived the death of Lydia C. Laird.

Eliza M. H. Chichester had six other children in addition to Lydia C. Laird.

One of them, Hallowell Chichester, died at age 4. Three others, Sarah C. Galloway, Ridgely B. Chichester and Richard D. Chichester, survived. Another, Cornelia C. Klutey, died, leaving as surviving issue a daughter, Anne K. Aquadro, and a son, Frederick E. Klutey, Jr. These five persons compose that portion of the respondents referred to hereafter as the "Blood Line Respondents."

The remaining child of Eliza M. H. Chichester was Robert H. Chichester who died on June 25, 1969. Robert H. Chichester had married his wife, Henrietta Chichester, on March 19, 1949. Henrietta had two children by a previous marriage both of whom were minors at the time. These two children resided with Robert and Henrietta thereafter and eventually, on July 1, 1964, Robert H. Chichester formally adopted his two stepchildren. The adoption took place in the State of Maryland and under its laws. Significantly, however, at the time of the adoption both stepchildren had reached the legal age of majority. Robert H. Chichester had no surviving blood issue, and thus he was survived by his two former stepchildren whom he had adopted as adults. These two, Gordon C. Keys and Mary Cook Stewart Brusnighan, are referred to hereafter as the "Adopted Adult Respondents."

Accordingly, Wilmington Trust Company seeks instruction as to whether the Adopted Adult Respondents are "issue" of Eliza M. H. Chichester within the contemplation of the aforesaid instruments who would thus take per stirpes the share of their adoptive father, Robert H. Chichester which, in turn, would determine whether the aforementioned trust assets of Philip D. Laird and the bequests of Lydia C. Laird would be divided into five equal shares for distribution purposes rather than four. Had the Adopted Adult Respondents still been minors when adopted in 1964, it would be clear that they would be entitled to take as the issue of Robert H. Chichester under the recent decisions of

*Wilmington Trust Co. v. Haskell,* Del.Ch., 282 A.2d 636 (1971), aff'd, Del.Supr., 304 A.2d 53 (1973); *Riggs National Bank v. Zimmer,* Del.Ch., 304 A.2d 69 (1973), *aff'd sub nom., Jackson v. Riggs National Bank,* Del.Supr., 314 A.2d 178 (1973); *Wilmington Trust Co. v. Huber,* Del.Ch., 311 A.2d 892 (1973), *aff'd sub nom., Benz v. Wilmington Trust Co.,* Del.Supr., 333 A.2d 169 (1975). However, the fact that they were adults at the time poses the question for decision which may be stated thusly:

For the purpose of determining "issue" under the present status of the Delaware statutory and decisional law, can a person adopted as an adult take by right of representation through his adoptive parent or is he limited to taking from his adoptive parent only?

■ Initially it should be noted that the opposing respondents are in agreement on two things. First, the fact that the adoptions took place in Maryland under Maryland law poses no problem. They are recognized as valid under Delaware law. See 13 Del.C. § 927; 2 *C.J.S.* Adoption of Persons § 144; 2 *Am.Jur.2d,* Adoption § 12. At the same time, both parties agree that Delaware law must control what interest, if any, that persons adopted in another jurisdiction will take in the distribution of the assets of a Delaware testator or trustor. *Industrial Trust Company v. Glanding,* Del.Ch., 38 A.2d 752 (1944), *aff'd, Glanding v. Industrial Trust Company,* Del.Supr., 46 A.2d 881 (1946); 2 *Am.Jur. 2d,* Adoption § 115; *Restatement (Second) Conflict of Laws,* § 262, comment d.

Secondly, the parties concede that no Delaware decision has expressly addressed itself to the rights of persons adopted as adults to share in the estates of their adopting parents or those of the lineal and collateral heirs of the latter.

The Blood Line Respondents take the position that the Adopted Adult Respondents are not issue within the meaning of the instruments in question and that they are not entitled to share in the distribution. This position is premised on the observation that historically the adoption of minor children and the adoption of adults have been treated separately by the General Assembly and that the statutory evolution of the one has not paralleled that of the other. An analysis of this statutory progression is necessary to an understanding of their relatively simple argument.

At present, our adoption laws are found at 13 Del.C. Ch. 9. This chapter is divided into two subchapters, the first being comprised of §§ 901–928 which, by subchapter heading, refers to the adoption of minors, and the second being comprised of §§ 951–956 which specifically refers to the adoption of persons over the age of 18 years. Within the subchapter dealing with the adoption of minors, § 919 refers to the general effect of adoption while § 920 specifically addresses itself to the effect of adoption upon rights of inheritance.[1] Within the subchapter dealing with the adoption of adults, § 954 deals with the effect of their adoption, but there is no provision corresponding to § 920 dealing with the right of inheritance which flow from the adoption of an adult.

The Blood Line Respondents point out that historically the first statutory enactment as to the adoption of children occurred in 1885[2] while the first enactment pertaining to the adoption of adults occurred in 1913.[3] In the 1915 Delaware Code the provisions for the adoption of

---

1. 13 Del.C. § 920(b) reads as follows:
   "(b) Upon the issuance of a decree of adoption, the adopted child shall acquire the right to inherit from its adoptive parent or parents and from the collateral or lineal relatives of such adoptive parent or parents, and the collateral or lineal relatives of the adoptive parent or parents shall at the same time acquire the right to inherit from the adopted child."

2. 17 Del.L. Ch. 612.

3. 27 Del.L. Ch. 263.

children or young persons were designated as §§ 3063–3066 while those referring to adults was codified at § 3067. As to the effect of the adoption § 3065 provided in pertinent part that the child "or young person" so adopted would thereafter have all rights that would exist "as fully and to all intents and purposes, as if the said child . . . or young person . . . were the lawful and natural offspring or issue . . ." of the adoptive parent. Similarly, § 3067 provided that upon the adoption of an adult, such person would thereafter have all such rights ". . . as fully and to all intents and purposes as if the said person . . . were the lawful and natural offspring or issue . . ." of the adoptive parent.

In the 1935 Delaware Code the statutes pertaining to the adoption of persons under 21 years of age were altered somewhat and, at § 3551 it was stated as to the effect of an adoption that the child would thereafter be ". . . to all intents and purposes, the child and heir at law of the person so adopting him or her . . . entitled to all the rights . . . of a child of such person begotten in lawful wedlock . . . ." Adult adoptions were covered by § 3553 and the above quoted language of § 3067 of the 1915 Code was retained.

This status of the law remained through the decision of our Supreme Court in *Glanding v. Industrial Trust Company, supra,* in 1946, which held that § 3551 created in an adopted minor child the right to inherit from the adoptive parent only and not through the adoptive parent to his or her lineal ancestors and collateral heirs. Subsequently, in 1952 § 3551 of the 1935 Code was extensively enlarged and amended[4] so as, among other things, to change this result and allow the "adopted child" to thereafter take by right of representation through as well as from an adoptive parent. This provision, enacted then as § 3551J, now appears as 13 Del.C. §

920.[5] However, as noted previously, no separate, corresponding amendment was made to § 3553, the adult adoption statute, and consequently, 13 Del.C. § 954 now constitutes the only section specifically dealing with the effect of the adoption of an adult, and its language is almost identical to that found in § 3067 of the 1915 Code and § 3553 of the 1935 Code.

Thus the Blood Line Respondents argue that since the pre-*Glanding* import of both § 3551 and § 3553 of the 1935 Code was the same, since § 3551 was interpreted by *Glanding* to limit the right of inheritance to the adoptive parent only, and since virtually the identical language of § 3553 has been retained in 13 Del.C. § 954, then *Glanding* must still control so as to limit the right of an adopted adult to inherit from but not through the adopting parent. They further point to the statement of the Chancellor in *Wilmington Trust Co. v. Haskell, supra,* that the rule of *Glanding* would still apply to trusts created prior to 1952 even though in that case he found that the testator's language was sufficient to support the conclusion that adopted children were included within the term "issue" as therein used. Since *Haskell* was affirmed, they say that *Glanding* is still good law, and thus the Adopted Adult Respondents cannot qualify as issue of Robert H. Chichester for the purpose of the instruments here being construed.

In summary, the Blood Line Respondents suggest that the act of the General Assembly in supplementing the statutes so as to expand the inheritance rights of adopted minor children while failing to similarly supplement the corresponding statute defining the rights of adopted adults, accomplished with attributed knowledge of the *Glanding* decision, shows a clear legislative policy, namely, that the right of an adopted adult to inherit should be limited to the estate of his adoptive parent. They say that there is a sound policy basis for this since

---

4. 48 Del.L. Ch. 134.

5. See footnote 1, *supra,* for that portion of § 920 applicable to the present controversy.

to permit more would be equivalent to putting two conspiring adults in a position whereby, through the adoption of one by the other, they could prevent a gift over to others in the case of a failure of issue and thereby, in effect, rewrite an existing will or trust so as to defeat the intention of a testator or trustor. Compare *In re Estate of Tafel,* 449 Pa. 442, 296 A.2d 797 (1972).

The foregoing legislative history does breed a certain amount of confusion. To complete the picture, § 919 of the present law, which basically has been carried over from § 3551I of the 1935 Code as it existed prior to the *Glanding* decision, reads in pertinent part as follows:

"(a) Upon the issuance of the decree of adoption, the adopted child shall be considered the child of the adopting parent or parents, entitled to the same rights and privileges and subject to the same duties and obligations as if he had been born in wedlock to the adopting parent or parents."

By the same token § 954, which contains essentially the same language employed in § 3553 of the 1935 Code and § 3067 of the 1915 Code, reads as follows:

"Upon the issuance of the decree of adoption and forever thereafter, all the duties, rights, privileges and obligations recognized by law between parent and child shall exist between the petitioner or petitioners and the person or persons adopted, as fully and to all intents and purposes as if such person or persons were the lawful and natural offspring or issue of the petitioner or petitioners."

The Adopted Adult Respondents argue that when the General Assembly enacted what is now § 920 in 1952, after the *Glanding* decision and with the predecessors of the foregoing quoted statutes already in existence, the purpose was to clarify the extent of inheritance rights deriving from all adoptions, and not just the adoption of minors. In support of this they point out that § 920 speaks only of

"the adopted child" and not of an adopted minor child. They further point out that the terms "child" or "children" are susceptible to two meanings at law—one being in the sense of "relationship" and the other being in the sense of age, or "minority." They suggest that the terms are most frequently used with reference to the relational status between parent and child and that this is their primary and commonly understood meaning. 14 *C.J.S.* Child, p. 1106. For instance, when the word "child" is used in a will or trust to indicate a later generation of takers, it is not limited to minor children. 4 *Page on Wills* (1961 Ed.) § 34.14. If this meaning is given to the term "adopted child" as used in § 920, then it can be argued that the legislative intent was to speak to the matter of inheritance rights flowing from all parent and child relationships created by adoption, regardless of the age of the person adopted at the time it took place.

In further support of this approach, the Adopted Adult Respondents say that it is of no significance that § 920 is found within the subchapter of 13 Del.C. Ch. 9 dealing with the adoption of persons under the age of 18 years. They point to the fact that the division of Ch. 9 into the two subchapters dealing with minors on the one hand and adults on the other did not occur until the 1953 recodification of the Delaware Code and thus subsequent to the 1952 amendments which added § 920. Since 1 Del.C. § 305 expressly provides that the classification and organization of the various titles of the Code into subchapters, etc., is done for orderly arrangement only, and that no implication of legislative construction is to be drawn therefrom, they argue that the Blood Line Respondents can draw no comfort from the location of § 920 in a subchapter which, by subchapter title, purports to deal only with the adoption of persons under 18 years of age.

Despite the seeming logic of this argument, it is weakened considerably by a closer examination of the 1952 amend-

ments. It is to be remembered that § 3553 of the 1935 Code dealt with the adoption of persons over the legal age of majority. Of necessity, § 3551 dealt with the adoption of persons under the legal age of majority. The *Glanding* decision involved a child adopted as a minor, and it was held that under § 3551 as it then existed (the comparable provisions now being found at § 919, *supra*) the effect of her adoption permitted her to take from her adoptive parent but not from lineal ancestors or collateral heirs of her adoptive parent. With this background, it may be of some significance that the 1952 amendments went solely to § 3551, enlarging it from one section to some seventeen new sections designated § 3551A through § 3551Q. What is now § 920 was added as § 3551J. At the same time, § 3553 was left untouched. Thus a counterargument can be made that at the time the General Assembly was only addressing itself to the adoption of persons under the age of majority and thus only intended to enlarge the inheritance rights of one adopted as a minor. Therefore, I am of the opinion that the present matter cannot be determined solely on the argument that the General Assembly was using the term "adopted child" in the relational sense in § 920. If the Adopted Adult Respondents are to prevail, support is needed from other quarters. However, as I see it, such support exists.

In *Wilmington Trust Company v. Haskell, supra,* the question was whether an adopted child qualified as "issue" under the terms of trusts created prior to the enactment of 13 Del.C. § 920. It was held by this Court that he did. This ruling was affirmed on appeal, the Supreme Court holding that where a trust instrument provides for ultimate distribution to a class to be determined at an indefinite future time, the testator or trustor is presumed, in the absence of any contrary context contained within the will or trust instrument, to have intended that the statutes in effect at the time the gift becomes operative be resorted to in order to determine membership in the class. 304 A.2d 54. Since the time for the determination of issue in that case occurred after the effective date of § 920, and since § 920 permitted an adopted child to inherit from lineal ancestors and collateral heirs of the adoptive parent, the adopted child was held properly includable within the class.

In the subsequent case of *Riggs National Bank v. Zimmer, supra,* again involving the right of an adopted child to share equally with children of blood descent, the Supreme Court reaffirmed the above rule of *Haskell,* pointing out that the intent to reject the operation of future law must be apparent and unambiguous from the language and tenor of the instrument. Significantly, Chief Justice Herrmann went on to state as follows at 314 A.2d 182:

> "The 'future law' here involved is 13 Del.C. §§ 919 and 920 (1952). The *public policy of our State,* reflected thereby, is that *adopted children* are to be considered under the law as natural children."

(Emphasis added).

While both of these cases dealt in fact with persons who were adopted while minors, neither case saw the need to make this a point of distinction (as did *In re Estate of Tafel, supra*) nor did the public policy announcement in *Riggs National Bank* include any exception as to persons adopted after having attained the age of majority. Moreover, despite the fact that the Chancellor had stated in *Haskell* that the *Glanding* case would still control trusts created prior to 1952, the Supreme Court, in affirming his decision, chose to do so on a different basis by adopting the foregoing rule that the law in effect at the time for determining the class would control. In so doing, the Supreme Court noted that *Glanding* and other related cases involved interpretations of the pre-1952 statutes and that the results reached were based squarely upon the statutes prior to their 1952 amendment. Since the public policy announced above stems directly from the

1952 amendments, and since the policy can be said to apply to "adopted children" generally without reservation to their age at the time of adoption, then the argument of the Blood Line Respondents that *Haskell* guarantees the application of *Glanding* to the present controversy seems without foundation.

In addition, consideration must be given to the recent amendments to the Delaware statutes governing the probate of wills and the administration of decedent's estates. This large-scale revision of our existing law became effective on December 25, 1974, and the statutes as so amended were made expressly applicable "to decedents dying on or after the effective date of this Act." 59 Del.L.Ch. 384, Section 3. It is to be remembered that Lydia C. Laird died September 2, 1975.

At 12 Del.C. § 101 the following definitional language has, as of December 25, 1974, become a part of our law relating to decedents' estates and fiduciary relations:

"For the purpose of wills, intestate succession and for all other purposes under this title, the following definitions shall apply:

"(1) 'Child' includes any individual entitled to take as a child under this title *by intestate succession* from the parent whose relationship is involved and excludes any person who is only a stepchild, a foster child, a grandchild or any more remote descendant.

"(2) 'Issue' of a person means all his lineal descendants of all generations, with the relationship of parent and child at each generation *being determined by the definitions of child and parent* contained in this title.

"(3) 'Parent' includes any person entitled to take, or who would be entitled to take if the child died without a will, as a parent under this title *by intestate succession* from the child whose relationship is in question and excludes any person who is only a stepparent, foster parent, or grandparent." (Emphasis added.)

■ From the emphasized portions of the above definitions it becomes apparent that the term "issue" is now defined by reference to the definitions of "parent" and "child," and these latter terms are themselves determined by a reference to the statutes governing intestate succession.

The revised statutes on intestate succession are now found at 12 Del.C.Ch. 5. At 12 Del.C. § 508 it is provided as follows:

"If, for purposes of *intestate succession,* a relationship of parent and child must be established to determine succession *by, through,* or *from* a person:

"(1) An adopted *person* is the *child* of an adopting parent and not of the natural parent . . . .."
(Emphasis added.)

■ Thus, under our present probate laws, the term "issue" when used in a will includes an "adopted person" and makes the adopted person—without distinction as to the age of the person at the time of the adoption—the child of the adoptive parent so as to permit the adopted person to take by intestate succession "by, through, or from" the adoptive parent. This is consistent with 13 Del.C. § 920 which permits the "adopted child" to do the same thing.

■ Since the foregoing probate statutes apply to the provisions of Lydia C. Laird's will previously recited herein, and since those provisions were in favor of such issue of Eliza M. H. Chichester as survived Lydia C. Laird, per stirpes and not per capita, then under her will it is clear that the Adopted Adult Respondents are properly included within the "issue" of Eliza M. H. Chichester by right of representation through their adoptive father, Robert H. Chichester.

■ As to the two trusts of Philip D. Laird, their creation predated both the

1952 amendment which added § 920 and the aforesaid 1974 revision of the statutes dealing with fiduciary relations and the administration of estates. As to the trust interests involved here, each provided for ultimate distribution upon the death of Lydia C. Laird, assuming that she survived her mother, Eliza Chichester. The class to whom distribution is to be made is defined as "the then living issue" of Eliza Chichester by right of representation. The time for determining the "issue" of Eliza Chichester "then living" is at the date of Lydia C. Laird's death. At the date of Lydia C. Laird's death the 1974 amendments to Title 12 were in effect and, as just noted, the policy expressed by the General Assembly therein by virtue of defining "issue" for purposes of intestate succession to include "adopted persons," is that in determining "issue" after December 25, 1974, an adopted person is included without distinction as to whether the person was adopted as an adult or as a minor. I am offered no facts which would indicate that by the language of either trust instrument Philip D. Laird intended to exclude adopted persons or children or to limit the determination of the ultimate distributees to the law as it existed at the effective date of the trust instruments. Thus, there appears no reason why the present policy of the law with regard to inheritance by adopted persons should be disregarded here.

Having considered the reasons and arguments of the parties, I am of the opinion that the Adopted Adult Respondents are also entitled to take under the trusts of Philip D. Laird as issue of Eliza M. H. Chichester by right of representation through their adoptive father, Robert H. Chichester. Wilmington Trust Company, in its capacity as trustee and executor, is instructed accordingly.

In passing I think it also appropriate to speak to the fear of the Blood Line Respondents that to permit adopted adults to share as lineal issue to the same extent as adopted minors would open the door for an expectant heir without issue to conspire with another adult so as to circumvent the intention of a testator or deceased trustor. It is conceded that this is a possibility. However, the same result can occur through the adoption of a minor child by a potential heir without issue, and the propriety of this is unquestioned. In either case, it is the act of adoption by the childless heir that prevents the lapse and gift over to others, not the age or the contractual ability or disability of the party adopted. In addition, there is another consideration even though it was not argued in this case. In many instances stepchildren cannot be adopted without the express consent of both natural parents. If one refuses, then the stepparent may be barred through no fault of his own from adopting them until such time as they have reached the legal age of giving their own consent. Under the theory of the Blood Line Respondents here, this would make the determination of whether an adopted stepchild could take as an heir through his adopting stepparent dependent upon the whims and wishes of a natural parent. I think it undesirable to create such a potential by judicial decision.

■ In conclusion, I take note that the Blood Line Respondents also seek to divest the Adopted Adult Respondents of any interest in the estate of Lydia C. Laird by offering the deposition testimony of her sister, Sarah C. Galloway, to the effect that the testatrix did not intend her brother's adopted children to share in her estate. The will of Mrs. Laird was drafted by capable Delaware counsel and was amended by a codicil as late as 1974. It is not contended to be ambiguous. As such the testimony of her sister, who is also a legatee, is clearly inadmissible to attempt to show that by the pattern of gifts made in the will and statements made by the testatrix during her lifetime the Adopted Adult Respondents were not considered as issue of her mother by Mrs. Laird. *Wilmington Trust Co. v. Huber, supra, aff'd, Benz v. Wilmington Trust Co., supra.*

Order on notice.