Catherine duPont SCHLAEPPI, William Garey Schneider, Christopher Hans Schneider, Martha Ann Caroline duPont, and Henry Verge duPont, children of Henry E. I. duPont and Martha Verge duPont, and Elizabeth Ansley Schlaeppi, a child of Catherine duPont Schlaeppi, Plaintiffs,

v.

DELAWARE TRUST COMPANY, Trustee under a Trust Indenture with Marion duPont Scott, deceased, dated June 7, 1960, and amended on June 17, 1970, Defendant.

Civ. A. No. 7898.

Court of Chancery of Delaware,
New Castle County.

Submitted: April 11, 1986.
Decided: Sept. 17, 1986.

John C. Phillips, Jr., Phillips & Snyder, P.A., Wilmington, and Morris L. Weisberg, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for plaintiffs.

Blaine T. Phillips, and Daniel F. Lindley, Potter, Anderson & Corroon, Wilmington, Del., for defendant-trustee.

HARTNETT, Vice Chancellor.

This is the latest, and hopefully final, legal proceeding arising out of an *inter vivos* Trust created by Mrs. Marion duPont Scott in 1960—long before she died in 1983. Plaintiffs are descendants by adoption of William duPont, Jr., the brother of Mrs. Scott. As such they are a grandnephew, grandniece or great grandniece by adoption of the deceased. They are not, however, blood relatives of Mrs. Scott. They brought this action seeking to be included as beneficiaries under the Trust. The defendant, Delaware Trust Company, the trustee, moved to dismiss the amended complaint. I find that the motion must be granted.

### I

The essential facts are not disputed. The late Mrs. Scott executed the Trust in 1960 and amended it in 1970. A second amendment was executed in 1976 but it is not relevant to the present controversy. Section II(4)(a) of the Amended Trust Indenture (hereinafter referred to as "Proviso (a)") provides, in part:

"For the purposes of this Trust reference to 'grandnieces and grandnephews and great grandnieces and great grandnephews' and 'issue of great grandnieces and issue of great grandnephews' *shall mean lawful blood descendants* of the Grantor's brother, William duPont, Jr., provided always, however, that:

(a) *An adopted child* and such adopted child's lawful blood descendants *shall not be considered as lawful blood descendants* of the adopting parent or parents or of anyone who is an ancestor of the adopting parent." (Emphasis added.)

This language on its face clearly and unambiguously shows that Mrs. Scott intended to preclude plaintiffs from benefitting under the Trust. Plaintiffs, however, assert numerous claims that the language does not preclude them from benefitting from it.

Mrs. Scott died on September 4, 1983 and soon thereafter actions concerning the Trust and her Will were filed in this Court: *DuPont, et al. v. Delaware Trust Co.,* Del.Ch., Civil Action No. 7421–NC; and in the Circuit Court of Orange County, Virginia: *DuPont, et al. v. Shackelford, et al.,* Chancery E 84–1. These cases, and a related action, *McConnell v. Delaware Trust Co.,* Del.Ch., Civil Action No. 7673–NC, were ultimately resolved pursuant to a Settlement Agreement executed by all the parties to the suits on October 15, 1984 and approved by this Court and the Virginia Court later that same month. All the present plaintiffs joined in the Settlement Agreement.

The Settlement Agreement, however, did not dispose of all the disputes over the Scott Trust. Paragraph VI(B) of the Settlement Agreement permitted the present plaintiffs to file "a new and separate suit in the Delaware Court raising the adopted children issue." This "adopted children issue" is defined in Paragraph VI(A) of the Settlement Agreement as "the claim em-

bodied in Count IV" of the Complaint filed in *DuPont, et al. v. Delaware Trust Co.*, Del.Ch., Civil Action No. 7421–NC, the original Delaware action.

On December 28, 1984, plaintiffs filed this present lawsuit. In their Complaint, they alleged that the late Mrs. Scott intended to include plaintiffs as beneficiaries under her Trust (Count I); that Mrs. Scott intended 13 *Del. C.* § 919(a) to govern the Trust, and thereby intended that plaintiffs be deemed to be lawful blood descendants of William duPont, Jr. (Count II); and that the Fourteenth Amendment to the United States Constitution bars this Court from ruling that plaintiffs are not beneficiaries under the Trust solely because of their adopted status (Count III).

The Trustee responded by urging that plaintiffs bargained away their Count I and Count III claims in the prior Settlement Agreement and that the remaining allegations (Count II of the Complaint) fail to state claims upon which relief can be granted.

II

I will first consider the arguments as to Count II of the Complaint. The Trustee concedes that Count II is not barred by the Settlement Agreement, however it argues that it fails to allege a claim upon which relief can be granted. The allegations of Count II, read in the light most favorable to plaintiffs, challenge the validity of Proviso (a) of the Trust.

Plaintiffs claim that Proviso (a) is invalid because it is contrary to the provisions of 13 *Del. C.* § 919(a). That subsection is part of subchapter I, chapter 9, title 13 *Delaware Code* which is the statute that provides for and regulates the adoption of children in Delaware. It states:

"(a) Upon the issuance of the decree of adoption, the adopted child shall be considered the child of the adopting parent or parents, entitled to the same rights and privileges and subject to the same duties and obligations as if he had been born in wedlock to the adopting parent or parents."

In Count II of the Complaint plaintiffs also allude to an argument—made more explicitly in Count IV of the First Amended Complaint in the original Delaware action—that 13 *Del. C.* § 919(a) supersedes Proviso (a). Plaintiffs claim that 13 *Del.C.* § 919(a) is incorporated by reference into the Trust by Section IV(2) of the Trust which states that Delaware law is to control all questions of the Trust's construction or validity. Plaintiffs argue that the provisions of 13 *Del.C.* § 919(a) are inconsistent with Proviso (a), and therefore plaintiffs conclude that Section IV(2) of the Trust (and by implication 13 *Del. C.* § 919[a]) should prevail over Proviso (a), thereby allowing them to take as beneficiaries under the Trust despite the clear language of Proviso (a).

■ Plaintiffs' argument, however, incorrectly states both the scope and the substance of the law of this State. While plaintiffs focus on the language of 13 *Del. C.* § 919(a), they ignore the holdings in Delaware cases which also constitute Delaware Law. These Delaware cases clearly hold that 13 *Del.C.* § 919(a) provides only a rebuttable presumption—not a mandate—that adopted children be treated the same as biological children in the construction of the provisions of trust instruments. *Wilmington Trust Co. v. Huber*, Del.Ch., 311 A.2d 892 (1973), *aff'd sub. nom., Benz v. Wilmington Trust Co.*, Del.Supr., 333 A.2d 169 (1975). This presumption can be overcome by a showing that the trust instrument itself evinces a clear intent to exclude adopted persons. See *Benz v. Wilmington Trust*, supra, 333 A.2d at 170. See also, *Jackson v. Riggs Nat'l Bank of Washington, D.C.*, Del.Supr., 314 A.2d 178 (1973); *Haskell v. Wilmington Trust Co.*, Del. Supr., 304 A.2d 53 (1973); *Wilmington Trust Co. v. Chichester*, Del.Ch., 369 A.2d 701 (1976), *aff'd*, Del.Supr., 377 A.2d 11 at 14 (1977) ("adult adopted persons are permitted to take through their adoptive parents *where the pertinent instruments evince no intent to the contrary*"). (Emphasis added.)

■ Delaware law therefore does not prohibit settlors from excluding adopted

persons from their trusts as plaintiffs assert; rather, Delaware law simply presumes that settlors do not intend such exclusions absent clear directions to the contrary. Mrs. Scott's intention to exclude adopted children and the adopted children's blood descendants is, however, clear and unambiguous from the language of Proviso (a).

Plaintiffs also assert that Proviso (a) of the Trust is, for some unspecified reason, void. Proviso (a), however, is consistent with Delaware case law which permits a settlor to exclude adopted persons from a trust and, while, as indicated above, such exclusions are not favored in this State, they are permitted. I conclude, therefore, that Count II of the First Amended Complaint fails to state a claim upon which relief can be granted and must be dismissed.

### III

Next to be considered is the Trustee's attack on Count I of the Complaint. Giving plaintiffs the benefit of any reasonable inferences, I find that three distinct claims are set forth in Count I: (1) that plaintiffs are, under Delaware law, the lawful blood descendants of William duPont, Jr.; (2) that, as a matter of law, the late Mrs. Scott intended to include plaintiffs as beneficiaries under the Trust; and (3) that Mrs. Scott lacked the capacity to amend the Trust for many years prior to her death in 1983.

### A.

The first allegation of Count I of the Complaint—that under Delaware law plaintiffs must be treated as the lawful blood descendants of their adopting parents—is merely the same argument made, as discussed above, in connection with Count II of the Complaint. Suffice to say that, because the first allegation of Count I merely mirrors Count II, it must be similarly dismissed for failure to state a claim upon which relief can be granted.

### B.

The Trustee next asserts that the doctrine of *res judicata* bars the second and third allegations of Count I of the Complaint. In support of its position it refers to Section I(B) of the Settlement Agreement adopted by the decrees of this Court and the Virginia Court, which stated that it resolved:

"... fully and finally any and all claims, cross-claims, demands and causes of action of any nature, either asserted or which could have been asserted in the [prior litigation], or arising in connection with or related to Decedent's Will, the administration of the Estate, the Indenture, the administration of the Trust, [or] the execution of this Agreement ... except for the adopted children issue in the Delaware Action, as provided in Article VI hereof, and any issues of expenses ..."

A settlement which is approved by a court has the same *res judicata* effect as a final judgment on the merits. *Ezzes v. Ackerman*, Del.Supr., 234 A.2d 444 (1967); *Maldonado v. Flynn*, Del. Ch., 417 A.2d 378 (1980). The doctrine of *res judicata* is available as a defense:

"... if the pleadings framing the issues in the first action would have permitted the raising of the issue sought to be raised in the second action, and if the facts were known, or could have been known to the plaintiff in the second action at the time of the first action ..." (Citation omitted.)

*Ezzes v. Ackerman*, supra, 234 A.2d at 445–446.

The defense of *res judicata*, therefore, clearly applies to the second and third allegations of Count I of the Complaint.

In the second allegation of Count I plaintiffs refer to Section II(4)(b) of the Trust and quote language from Mrs. Scott's Will and then claim that the instruments show that Mrs. Scott intended to include plaintiffs as beneficiaries under the Trust. Leaving aside the merits of such an allegation (novel as it may seem), it is clear that this claim could have been raised in the original Delaware action. Moreover, be-

cause the claims in this present suit are based entirely on the language of the Trust and Mrs. Scott's Will, both of which were attached as exhibits to the First Amended Complaint in the original Delaware action, plaintiffs cannot claim that they now raise new facts which could not have been known at the time of the first action.

### C.

Likewise, the allegations contained in Count I of the Complaint, that Mrs. Scott was incompetent to amend her Trust is now barred by the *res judicata* effect of the Settlement Agreement. This claim not only could have been raised in the original Delaware action, it was. Count II of the First Amended Complaint in Del.Ch., Civil Action No. 7421–NC alleged that Mrs. Scott lacked the capacity to reform her Trust in 1976 or years before her death in 1983. Thus, assuming *arguendo* that this allegation states a cognizable claim, although it does not assert that the settlor was incompetent in 1970 when the dispositive amendment to the Indenture was executed, it is also barred by the doctrine of *res judicata* because it was a claim raised in the prior suit and compromised by the settlement.

### D.

Plaintiffs, however, contend that the second and third allegations of Count I cannot be barred by the doctrine of *res judicata* because these allegations were specifically exempted from the settlement decrees in the prior actions. The language of the Settlement Agreement expressly preserves "the adopted children issue" for further litigation in "a new and separate action". This exemption, however, cannot be given the expansive definition urged by plaintiffs because the Settlement Agreement expressly limits the adopted children issue to "the claim embodied in Count IV" of the Complaint in Del.Ch., Civil Action No. 7421–NC. The substance of that claim stated:

> "Section IV(2) of the Trust Indenture of Marion duPont Scott provides that all questions pertaining to the construction or validity of the Trust Indenture shall be governed by the law of the State of Delaware. The law of Delaware as to adopted children, embodied in 13 *Del. C.* § 919 and 920 ... was thus made controlling by Marion duPont Scott ... and the laws and public policy of the State of Delaware prevail over any contrary provision in the Trust Indenture of Marion duPont Scott."

The only viable defense to the *res judicata* claim posed at this juncture, therefore, is whether the second and third allegations of Count I in this present case can fit within the claims embodied in the above language.

Plaintiffs maintain that Count IV of the original Delaware action fairly raised the issue of whether Mrs. Scott really intended to exclude them from her Trust. They also urge that the second and third allegations of Count I of the present suit raise questions concerning the settlor's intent and thus are similar enough to Count IV of the original suit to survive the settlement of the earlier lawsuits. I disagree.

Although the second and third allegations of Count I of the First Amended Complaint in the present case can be facially harmonized with the allegations in Count IV of the Complaint in the original Delaware action, three separate claims are actually alleged, each of which is predicated on radically different theories. The second allegation of Count I of the Complaint presently before the Court is premised on the alleged inconsistency of Section II(4)(b) of the Trust, certain language of the settlor's Will, and Proviso (a), whereas the third allegation of this Count focuses on the mental state of Mrs. Scott. Conversely Count IV of the Complaint in the original Delaware action alleged that Proviso (a) could not be reconciled with Section IV(2) of the Indenture and 13 *Del. C.* §§ 919 and 920. I, therefore, conclude that the second and third allegations of Count I of the Complaint presently before the Court do not spring from the claim which was preserved by the Settlement Agreement and therefore Count I must be dismissed be-

cause it was compromised in the prior litigation.

## IV

██ Assuming, arguendo, that the doctrine of *res judicata* does not bar any of the plaintiffs' claims which are based on the Fourteenth Amendment to the U. S. Constitution, it is clear, nonetheless, that Count III of the Complaint does not make a sufficient allegation of state action to fall within the protection of the Fourteenth Amendment and therefore must be dismissed for failure to state a cause of action upon which relief can be granted. The Fourteenth Amendment protects individuals only against the acts of States. U.S. Const. Amend. XIV § 1; *e.g., Rendall-Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). In *In re Will of Potter,* Del.Ch., 275 A.2d 574, 580 (1970), this Court recognized that "the Fourteenth Amendment does not apply to purely private trusts."

In determining whether there is sufficient state action to bring a matter within the ambit of the provisions of the Fourteenth Amendment, courts must look to the facts and circumstances of each case. *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). In the present case the Complaint, even when cast in the light most favorable to plaintiffs, does not even suggest that the State of Delaware or any of its agents ever controlled, advised, or were in any way involved with either the Scott Trust or Will or the defendant-trustee before these suits were brought.

Plaintiffs argue, however, that if this Court finds that the defendant-trustee must exclude them from the Scott Trust solely because of their adopted status, such a finding alone would constitute sufficient state action to invoke the provisions of the Fourteenth Amendment. Plaintiffs therefore, in effect, contend that this Court has no choice but to invalidate Proviso (a). In support of this position plaintiffs cite, *inter alia, Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953); *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); *State v. Brown,* Del.Supr., 195 A.2d 379 (1963); and *Bank of Delaware v. Buckson,* Del.Ch., 255 A.2d 710 (1969).

In each of these cases, however, there was a much greater showing of state action than can be inferred from plaintiffs' allegations in their Complaint. All of the cases cited by plaintiffs involved racial discrimination which is especially suspect. In order to find State action, courts generally require a more compelling showing of state involvement where discrimination on some grounds other than race is alleged. Annot., 42 A.L.R.2d 463, at 471 (1979 & Supp. 1985).

Even in cases where racial discrimination was claimed, and this Court found that it could neither enforce nor instruct a trustee to honor a racially discriminatory clause in a trust instrument, the Court was not content to hold that such an instruction alone was state action within the meaning of the Fourteenth Amendment. In *Milford Trust Co. v. Stabler,* Del.Ch., 301 A.2d 534 at 537 (1973); *Will of Potter,* supra, 275 A.2d at 582–583. And in *Bank of Delaware v. Buckson,* supra, 255 A.2d at 714–715, this Court relied on facts independent of its own role in order to find State action. No such facts have even been alleged here.

The present case also comes to this Court on a much different footing than in the federal cases cited by plaintiffs. In *Barrows v. Jackson,* supra, 73 S.Ct. 1031 and *Shelley v. Kraemer,* supra, 68 S.Ct. 836, the parties to a racial restrictive land covenant brought actions at law and in equity to enforce the agreements when some of their co-covenantors sold parcels to blacks. Similarly, in *State v. Brown,* supra, 195 A.2d 379, a merchant initiated the prosecution of an action for criminal trespass against a black who refused to leave his store after being denied service. Thus, in the federal cases cited by plaintiffs a court was called upon to enforce a policy of racial discrimination. In the words of the United States Supreme Court, "These are not cases ... in which the States have merely abstained from action, leaving private individuals free to impose such discrimination

as they see fit." *Shelley v. Kraemer*, supra, 68 S.Ct. at 845.

The allegations of plaintiffs, however, are quite different. It is the plaintiffs who are seeking to have this Court rewrite the Indenture to include them as beneficiaries. This the Court cannot do as the Trust is purely a private matter. See *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), which held that a State is not responsible for the initiatives of a private party even where the State approves or acquiesces in those initiatives, and 15 AM.JUR.2d, *Civil Rights* § 10.

Because I have concluded that plaintiffs have provided no discernable basis for a finding of state action, Count III of the Complaint must be dismissed for failure to state a claim upon which relief can be granted.

## V

Even if I were somehow able to glean some state action from the allegations of Count III, I would still have to dismiss this Count on the alternative ground that it fails to state a proper claim for relief under the Equal Protection Clause of the Fourteenth Amendment. When legislation is challenged as being contrary to the Equal Protection Clause, courts apply greater scrutiny to those statutes which either impair a right protected by the Constitution or affect a suspect class. *Cleburne v. Cleburne Living Center*, 473 U.S. 432, at 439, 105 S.Ct. 3249, at 3254, 87 L.Ed.2d 313, at 320 (1985). Although the challenge here is not to a legislative act but to a judicial rule, I will, *arguendo*, ignore the difference.

There is clearly no constitutional right at stake. Plaintiffs do not, and cannot, claim that they have any choate interest in the *res* of the Scott Trust or a right to be named as beneficiaries. Instead, plaintiffs assert that their exclusion from the Trust must be strictly scrutinized because they, as adopted persons, are members of a suspect class.

■ Plaintiffs failed to cite, however, any case holding that adopted persons constitute a suspect class under the Equal Protection Clause. The United States Supreme Court has held that statutory classifications based on race, alienage and national origin warrant its strictest scrutiny. *Cleburne Living Center*, supra, 105 S.Ct. at 3255. It has, however, declined to afford the same high level of scrutiny to illegitimate children. *Mathews v. Lucas*, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). The Court in *Mathews v. Lucas* reasoned that, although arbitrary discrimination against the illegitimate was impermissible, not all distinctions based on legitimacy were inherently untenable. *Mathews*, 96 S.Ct. at 2762. In addition, the Supreme Court found that "discrimination against illegitimates has never approached the severity or pervasiveness of the historic legal and political discrimination against women and Negroes" (citation omitted). *Id.*

Everything the Supreme Court said of illegitimates, by analogy, also is applicable to adopted persons. Accordingly, I find that the challenged rule of law here should be given the same scrutiny as is normally attributed to statutes which make distinctions on the basis of legitimacy. Under this level of review, the party challenging the classification bears the burden of establishing its insubstantiality. *Mathews v. Lucas*, supra, 96 S.Ct. at 2764.

■ Given the above standard of review and finding the manifest reasonableness of the challenged Delaware rule of law, it is clear that plaintiffs could not prevail under any set of facts which they have alleged. In adopting the rule of law that a testator may disinherit adopted children, if he desires, the courts of Delaware have merely held that the State has an interest in protecting the rights of property owners to dispose of their holdings as they see fit. This rule does not necessarily discriminate against adopted persons because it does not prohibit them from being included in a trust. It merely treats them as any other relatives—who may be favored or disinherited at the discretion of the Settlor.

Another reason that the rule of law in this State is not unfair is that it prevents a testator's intent from being subverted by

technicalities. Mrs. Scott's Trust Indenture evinces an intent to use the trust assets to benefit the blood descendants of William duPont, Jr., the settlor's brother. Without Proviso (a) in place, however, an actual descendant of William duPont, Jr. could adopt an unlimited number of persons—all of whom might then become beneficiaries of the Scott Trust. Thus the assets of the Trust would be spread far beyond the limits intended by the late Mrs. Scott.

In addition, the late Mrs. Scott may have executed Proviso (a) with the intention of specifically excluding the plaintiffs. Despite plaintiffs' arguments to the contrary, there is no reason why a settlor should have to identify by name the adopted persons she wanted to exclude from her Trust —indeed, a sense of diplomacy may have led Mrs. Scott to couch Proviso (a) in its present terms or she may have suspected that other children might be adopted after the Trust was executed. In any event, it was for Mrs. Scott to decide who would be the beneficiaries of her Trust. *Will of Potter,* supra, 275 A.2d at 582. And the State is justified in preserving her right to select the objects of her bounty.

Count III of plaintiffs' Complaint fails to allege any grounds under which I could find that the challenged rule is insubstantially related to a valid State interest. Plaintiffs cannot, on their allegations, carry their burden under *Mathews v. Lucas,* supra. Count III therefore must be dismissed along with the rest of the Complaint.

## VI

I also note that plaintiffs' briefs have set forth a hodgepodge of facts and other arguments. Plaintiffs seem to claim that the fact that they were not strangers to Mrs. Scott's family before their adoption is somehow important. Because plaintiffs have not claimed that, but for their adoption, they would be beneficiaries under the Scott Trust, I disagree. Plaintiffs also argue that the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution requires this Court to conform to the Legislative mandate of 13 *Del. C.* § 919(a) and thus requires that Proviso (a) be invalidated. I have decided, however, that Proviso (a) is consistent with Delaware Law—including § 919(a)—and it is pointless to discuss this argument any further.

Finally, plaintiffs contested defendant's *res judicata* defense with a curious mix of assertions apparently to the effect that: under the Chancery Rules they should be allowed to freely amend the claims which were not prejudiced by the Settlement Agreement; that the Trustee has somehow distorted the distinctions between claims and allegations; and that the Trustee's position depends on the obsolete "Theory of the Pleadings". Suffice it to say that my holdings that the claims raised by plaintiffs are barred by *res judicata* are not based on procedural rules or semantics or arcane theories of jurisprudence. Rather, I have barred the claims pursuant to the clear language of the Settlement Agreement which was primarily drafted by plaintiffs' counsel and which both sides agreed to only after protracted arm's-length negotiations. Whatever plaintiffs may now think about the effect of the Settlement Agreement, it is clear that they have gotten what they bargained for. Accordingly, the Complaint must be dismissed in its entirety.

IT IS SO ORDERED.